Frank R. ANNUNZIATO, New Haven Citizens Against Give-Aways, Michael Federow, John Cox, Matthew Borenstein, Carolyn Parkinson, and Michael Massaro

v.

**NEW HAVEN BOARD OF ALDERMEN, et al.**

Civ. No. N–82–321.

United States District Court, D. Connecticut.

Aug. 24, 1982.

Mark A. Shiffrin, Greenberg, Hurwitz & Licari, New Haven, Conn., Martin Margulies, Bridgeport, Conn., Martha Stone, Conn. Civil Liberties Union Foundation, Hartford, Conn., for plaintiffs.

Beverly Hodgson, Koskoff, Koskoff & Bieder, Bridgeport, Conn., Charles G. Albom, Karen S. Nash, Clarine Nardi Riddle, Roger J. Frechette, Edward Zelinsky, pro se, New Haven, Conn., for defendants.

## RULING ON MOTIONS TO DISMISS AND FOR PRELIMINARY INJUNCTION

ELLEN B. BURNS, District Judge.

This action to rescind the sale of municipal property to a religious organization as violative of the First Amendment Establishment Clause[1] is before the Court on plaintiffs' motion for a preliminary injunction to bar use of the property by the religious organization. Plaintiffs are six New Haven residents, three of whom are municipal taxpayers, and New Haven Citizens Against Giveaways (NHCAG), an unincorporated association purporting to represent "approximately 50 New Haven residents, parents, and taxpayers...." In Count I of their two-count Complaint plaintiffs allege defendants violated their rights under the First and Fourteenth Amendments and 42 U.S.C. §§ 1983[2] and 1985.[3] Count II alleges defendants deprived plaintiffs of equal protection of the law, also in violation of 42 U.S.C. §§ 1983 and 1985. Named as defendants are the City of New Haven, the mayor, the Board of Aldermen and its members, the Board of Education, and The Gan, Inc., allegedly "a private non-stock corporation whose purpose is to provide a Jewish day school...." Defendants

---

1. The First Amendment declares: "Congress shall make no law respecting an establishment of religion...." This prohibition against establishment of religion was made applicable to the states and their municipalities by the Fourteenth Amendment. *See Murdock v. Pennsylvania,* 319 U.S. 105, 108, 63 S.Ct. 870, 872, 87 L.Ed. 1292 (1943).

2. 42 U.S.C. § 1983 provides in relevant part, that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof

to the deprivation of any rights, privileges, or immunities served by the Constitution and laws, shall be liable to the party injured in an action at law, *suit in equity,* or other proper proceeding for redress...." (Emphasis added).

3. 42 U.S.C. § 1985(3) provides that

> If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... the person so injured or deprived may have an action for the recovery of damages....

have moved to dismiss the case on the grounds that plaintiffs lack standing to sue, the case is moot, and the complaint fails to state a claim upon which relief can be granted.

Before the court reviews the factual background and rules on the pending motions, some preliminary observations are in order. As is often true of cases challenging government actions as violative of the Establishment Clause, this case has generated intense public interest.[4] *See Committee for Public Education and Liberty v. Regan,* 444 U.S. 646, 662, 100 S.Ct. 840, 851, 63 L.Ed.2d 94 (1980) ("... Establishment Clause cases are not easy; they stir deep feelings...."). Ever since colonial times the relationship between government and religion has been the subject of political conflict and frequent litigation. *E.g., Valley Forge Christian College v. Americans United For Separation of Church and State,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Widmar v. Vincent,* 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981); *Gilfillan v. Philadelphia,* 637 F.2d 924 (3d Cir.1980); *Johnson v. Sanders,* 319 F.Supp. 421 (D.Conn.1970) (three judge court). In enacting the Establishment Clause the framers hoped to remove such problems from the political arena by creating a constitutional barrier between government and religion that would prevent "sponsorship, financial support, and active involvement of the sovereign in religious activity." *Walz v. Tax Commissioner,* 397 U.S. 664, 668, 90 S.Ct. 1409, 1411, 25 L.Ed.2d 697 (1970); *accord Committee for Public Education and Religious Liberty v. Nyquist,* 413 U.S. 756, 773 n. 33, 93 S.Ct. 2955, 2967 n. 33, 37 L.Ed.2d 948 (1973); *Everson v. Board of Education,* 330 U.S. 1, 8–11, 33–43, 67 S.Ct. 504, 507–509, 520–525, 91 L.Ed. 711 (1947). Against this constitutional backdrop the Court moves on to consider and resolve the questions raised by this litigation.

## FACTUAL BACKGROUND

For purposes of ruling on the pending motions the Court finds the following facts based on evidence adduced at a hearing on these motions. In 1981 the New Haven Board of Education considered closing the Roger Sherman School, which was built in 1896 and needed substantial rehabilitation, but deferred decision pending review of the matter by two private consulting firms. After the consultants recommended closing the school, the Board of Education met on January 25, 1982, and voted to close the school at the end of the 1981–82 school year. On January 27, 1982, defendant The Gan sent a letter to the mayor in which it offered to buy the Roger Sherman School for $30,000 and to make necessary energy-related repairs within two years of purchase. In the letter The Gan expressed its need for an early decision because its existing lease of a school building was due for renewal.[5] On February 1, 1982, the mayor sent the proposal to the Board of Aldermen, together with his recommendation that the board act favorably on the proposal to sell the school property to The Gan for $30,000. On February 8, 1982, the Board of Education voted to transfer the school to the Department of Public Works as surplus property upon completion of the school year.

In mid-February the City Planning Commission and the aldermanic municipal services committee held public meetings on The Gan proposal and recommended approval. The proposal, in the form of a resolution, was submitted formally to the Board of Aldermen on March 1, 1982, and, after lengthy comments by one alderman in support of the proposal to sell the surplus prop-

---

4. Indicative of the widespread public interest in this case is the fact that several *amicus curiae* briefs were filed, for which the Court is grateful. The Court is surprised, however, by the degree of acrimony contained in post-hearing briefs submitted by the parties. While the Court appreciates that intense feelings are not the sole domain of the parties, it must note that the sentiments of counsel should not taint appropriate advocacy.

5. The Gan's option to renew its existing lease for premises it had used since September, 1978, was due to expire April 15, 1982. (Testimony of Daniel Greer).

erty to The Gan for $30,000,[6] another member of the board moved to amend the resolution to reduce the price to $1.[7] The motion to amend passed by a vote of 15–12[8] and the amended resolution was approved 24–2–1. The mayor officially approved the action of the Board of Aldermen on March 5, 1982, and the sale was closed on March 15, 1982.

Under the terms of the contract, entitled Land Disposition Agreement, the "sale, conveyance and delivery of possession" was to occur on or before July 1, 1982, and by agreement of the parties transfer of possession was advanced to June 18, 1982. On June 22, 1982, The Gan took full control of the property and began offering summer school to 25–30 students. Since moving to the school The Gan has constructed quarters for a resident janitor, installed a burglar alarm system, and contracted for landscaping and repairs to the heating system. The Land Disposition Agreement provides that The Gan must rehabilitate the heating system and install storm windows within two years of obtaining a building permit from the city.[9] On June 23, 1982, plaintiffs filed the instant action.

## MOTIONS TO DISMISS

■ Relying largely on *Valley Forge Christian College, supra,* The Gan asserts plaintiffs lack standing as taxpayers and/or residents of New Haven to maintain this suit. The Gan argues that plaintiffs can show no actual injury from the allegedly unconstitutional sale but complain only of abstract, ideological harm. Though the doctrine of standing unquestionably requires plaintiffs to allege actual injury as opposed to ideological injury, see *id.* at 4105, 4108, The Gan errs in concluding that plaintiffs have not alleged the requisite actual injury.

The gravamen of Count I is that the sale of the Roger Sherman School for $1 instead of $30,000 as offered by The Gan constitutes a municipal gift of $29,999 to a religious organization in violation of the Establishment Clause. Notwithstanding the fact that the city benefitted financially by disposing of surplus property and avoiding ongoing maintenance expenses,[10] a benefit that would have inured to the city regardless of the sale price, plaintiffs have alleged an injury to the municipal fisc of $29,999. This Court does not read *Valley Forge Christian College, supra,* a challenge by federal taxpayers to the disposition of federal surplus property to a religious organization, as undermining the. long-established rule that

> resident taxpayers may sue to enjoin an illegal use of the moneys of a municipal corporation. . . . *The interest of a taxpayer of a municipality in the application of its moneys is direct and immediate* and the remedy of injunction to prevent their

6. Plaintiffs' Exhibit 5, Transcript of Meeting of the Board of Aldermen on March 1, 1982, Comments of Alderman Zelinsky at 11–24.

7. Plaintiffs' Exhibit 5, *supra* note 7, Comments of Alderwoman Azzaro at 24 ("Seeing the [Roger Sherman] School is in such terrible condition *and that they need so much money to fix it,* why don't we either sell it to them for a dollar or give it to them for nothing?") (emphasis added).

8. Two members of the Board of Aldermen spoke in favor of selling the Roger Sherman School to The Gan for the offered purchase price of $30,000. Alderman Holohan stated ". . . I think its entirely appropriate that the sales price that was negotiated between the City of New Haven and as agreed upon, as I understand it, by The Gan Directors, should continue to be the sales price." Plaintiffs' Exhibit 5 at 25. After Alderman Zeidenberg spoke, echoing the sentiments of Alderman Holohan, the motion was voted on. *Id.*

9. Doris Zelinsky, wife of Alderman Zelinsky, testified that The Gan intends to follow a three-phase renovation program at an estimated final cost of approximately $270,000. Scheduled for Phase I is upgrading of the heating system at an estimated cost of $21,000 and installation of storm windows at an estimated cost of $18,750. Of the total budget $245,500 has been allocated for painting, interior and exterior, and remodelling.

10. Frank Altieri, assistant superintendent of schools in charge of the operating budget for the school system, testified that heating the Roger Sherman School would cost $25,000 to $30,000 annually and basic maintenance and security would cost $15,000 to $20,000.

misuse is not inappropriate. It is upheld by a large number of state cases and is the rule of this Court.

*Frothingham v. Mellon,* 262 U.S. 447, 486, 43 S.Ct. 597, 600, 67 L.Ed. 1078 (1923) (emphasis added). Dictum in *Valley Forge Christian College, supra* 454 U.S. at 480 n. 17, 102 S.Ct. at 763 n. 17, "that any connection between the challenged property transfer and respondents' tax burden is at best speculative and at worst nonexistent ... [because] there is no basis for believing that a transfer to a different purchaser would have added to government receipts" is inapposite because plaintiffs have alleged New Haven's treasury would have been benefitted by $29,999 but for the allegedly unconstitutional sale. Therefore, plaintiffs Federow, Berenstein and Massaro, municipal taxpayers, have standing to bring this " 'good faith pocketbook action' " challenging the sale of the Roger Sherman School to The Gan for $1. *See Ridgefield Women's Political Caucus v. Fossi,* 458 F.Supp. 117, 120 n. 3 (D.Conn.1978).

Plaintiffs Annunziato, Cox and Parkinson allege only that they are residents of New Haven and, as such, they are not within the parameters of the rule in *Frothingham v. Mellon, supra.* Unlike municipal taxpayers whose individual tax burdens are affected by the city's ability to obtain funds from other sources, residents cannot claim personal economic harm from the allegedly unconstitutional sale of the Roger Sherman School. While all residents may suffer from diminished municipal services because of the allegedly unconstitutional transaction, that possibility is too remote and speculative to constitute actual injury for purposes of standing. With respect to NHCAG, an organization of taxpayers, residents and parents of public school students, it has standing to represent only the interests of its taxpayer members since an organizational plaintiff has standing to the extent its members would have standing as individual plaintiffs. *See Sierra Club v. Morton,* 405 U.S. 727, 734–35, 92 S.Ct. 1361, 1365–1366, 31 L.Ed.2d 636 (1972).

In Count II plaintiffs allege that "city subsidization of one religious group results in differential treatment of that religious group vis a vis all other persons within the City of New Haven." Despite the possibility that the municipal defendants discriminated against some persons or groups in favor of The Gan, there is nothing in the complaint suggesting that any of the plaintiffs sustained actual injury. Therefore, the motion to dismiss Count II for lack of standing must be granted.

The municipal defendants join The Gan in urging dismissal of the case as moot since an injunction prohibiting transfer of the Roger Sherman School to The Gan is no longer possible. Although The Gan is now in possession of the school and the Court can no longer enjoin transfer of title, defendants miss the mark in arguing that the entire case is therefore moot. In their complaint plaintiffs also seek a judgment declaring the sale void and an injunction prohibiting The Gan from using the Roger Sherman School. Accordingly, there remains a live controversy capable of judicial resolution and the case is not moot. *See Sullivan v. Murphy,* 478 F.2d 938, 961–62 (D.C.Cir.1973).

The Gan also moves to dismiss the complaint against it for failure to state a claim upon which relief can be granted. A motion to dismiss for failure to state a claim should not be granted *"unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim."* 2A Moore's Federal Practice (2d ed. 1982) ¶ 12.08 at 2274 (emphasis in original). In Count I plaintiffs allege defendants violated their rights under 42 U.S.C. §§ 1983 and 1985 and the First and Fourteenth Amendments. The Gan correctly asserts that plaintiffs have no cause of action under 42 U.S.C. § 1985 absent proof of race or class-based animus underlying the allegedly unconstitutional transaction. *See Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Slavin v. Curry,* 574 F.2d 1256, 1262 (5th Cir.1978); *Orshan v. Anker,* 489 F.Supp. 820, 823 (E.D.

N.Y.1980); *Slegeski v. Ilg,* 395 F.Supp. 1253, 1255 (D.Conn.1975). Since the complaint is devoid of any allegation that plaintiffs are members of a class discriminated against by defendants, it fails to state a claim upon which relief can be granted under 42 U.S.C. § 1985. *See Macko v. Bryon,* 641 F.2d 447, 450 (6th Cir.1981) (per curiam); *Powell v. Kopman,* 511 F.Supp. 700, 704 (S.D.N.Y.1981).

Although wholly private parties are not subject to liability under 42 U.S.C. § 1983, The Gan would be liable under Section 1983 if it acted in concert with the municipal defendants to deprive plaintiffs of their rights, privileges or immunities under the constitution. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970). By alleging that The Gan contracted with New Haven for a transfer of property in violation of the Establishment Clause and plaintiffs' right not to support an established religion, the complaint alleges the necessary element of concerted action to state a claim against The Gan under 42 U.S.C. § 1983.[11] Since plaintiffs may be able to prove facts sufficient to support their claim under Section 1983, the motion to dismiss must be denied.

### MOTION FOR PRELIMINARY INJUNCTION

■ To obtain a preliminary injunction a party must show "possible irreparable injury *and* either (1) probable success on the merits *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Caulfield v. Board of Education,* 583 F.2d 605, 610 (2d Cir.1978). Irreparable injury exists "when monetary damages are difficult to ascertain or are inadequate." *Danielson v. Local 275, Labor International Union of North America,* 479 F.2d 1033, 1037 (2d Cir.1973). Although the basis of plaintiffs' standing to sue is their alleged economic

injury, monetary damages would be inadequate compensation for the additional legal injury from the underlying violation of the Establishment Clause. *See Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976) (plurality opinion); *International Society for Krishna Consciousness, Inc. v. City of New York,* 484 F.Supp. 966, 970–71 (S.D.N.Y.1979); *Collin v. O'Malley,* 452 F.Supp. 577, 579 (N.D.Ill.1978). Therefore, plaintiffs have shown that they may be irreparably harmed absent preliminary injunctive relief and the question remains whether they also have established probable success on the merits.

■ The Supreme Court has held that government action which aids religious institutions "does not contravene the Establishment Clause if it has a secular purpose, if its principal or primary effect neither advances nor inhibits religion, and it does not foster an excessive entanglement with religion." *Committee v. Public Education and Religious Liberty v. Regan, supra* 444 U.S. at 653, 100 S.Ct. at 846; *accord Lemon v. Kurtzman,* 403 U.S. 602, 612, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). Government action with a purely secular and therefore permissible purpose nonetheless violates the Establishment Clause if it fosters excessive entanglement between government and religion or has a primary effect of advancing religion. *Committee for Public Education and Religious Liberty v. Nyquist, supra* 413 U.S. at 774, 93 S.Ct. at 2966. On the other hand, government action that aids a religious institution only indirectly or incidentally is not *per se* unconstitutional. *Id.* at 771, 93 S.Ct. at 2964. With these constitutional principles in mind, the Court turns to the challenged transaction to determine if it fails any part of the controlling three-prong test.

■ As to secular purpose, the evidence supports the municipal defendants' contention that they had legitimate reasons for selling the Roger Sherman School to The Gan. New Haven has had difficulty selling

---

11. As a doctrinal matter, a violation of the Establishment Clause by the government necessarily has the effect of infusing the govern-

mentally-aided religion with characteristics of a state religion, thereby making the religion a government agent and state actor.

other surplus property, which has become a target of vandalism and a contributing factor to urban blight in certain neighborhoods, and has incurred expenses for providing a modicum of maintenance for surplus buildings.[12] In light of this experience it was reasonable for New Haven to act expeditiously when offered the opportunity to sell the Roger Sherman School for $30,000. Although one witness testified that the process by which the city sold the school departed from standard practice,[13] the balance of evidence indicates that, regrettably, New Haven has no standard practice other than to ultimately submit land disposition agreements to the Board of Aldermen.[14] In any event, the urgency reflected in The Gan offer compelled the city to act with dispatch if it wished to take advantage of an offer that would have benefitted the city. Therefore, though The Gan received a benefit from the city's expeditious handling of its proposal, the Court concludes that no improper purpose can be inferred from the speed of the city's process of decision-making and the primary effect of that process was not to aid The Gan.

The Court must reach a different conclusion, however, with respect to the decision of the Board of Aldermen to forego receiving an additional $29,999 for the property. Since The Gan offered to buy the Roger Sherman School for $30,000 and make necessary repairs, it can only be concluded that The Gan was willing and able to pay that price and make repairs if the city accepted its offer.[15] Defendants' argument that the decision of the Board of Aldermen to sell the property for $1 establishes the fair market value of the property at $1 is entirely untenable in light of the undeniable fact that The Gan considered the property worth at least $30,000.[16] Inasmuch as the city derived no benefit from reducing the sale price whereas The Gan reaped a windfall by being relieved of what otherwise would have been a legal detriment of $30,000, the only logical inference is that the purpose of the city's decision to lower the price to $1 was to benefit The Gan.[17] Similarly, since the city received no benefit by lowering the sale price, the Court concludes that the primary effect of the city's decision was to advance religion. In sum, the sale of the Roger Sherman School to The Gan for $1 after The Gan offered $30,000 for the property violated the Establishment Clause because there was no secular purpose in the rejection of the offer and the primary effect of the action was to relieve The Gan of $29,999 expected indebtedness. Since plaintiffs have shown irreparable harm and probable success on the merits, they are entitled to preliminary injunctive relief.[18]

Although plaintiffs have requested that the Court enjoin The Gan from using the Roger Sherman School, the Court believes a more equitable remedy is available and appropriate to vindicate plaintiffs' rights under the First Amendment without unnecessarily or excessively injuring the community as a whole and the children registered

---

**12.** Testimony of Frank Altieri, William Donahue, John Sawyer.

**13.** Testimony of Charles Allen III.

**14.** *Id.*

**15.** *See* Plaintiffs' Exhibit 5 at 25, Comments by Alderman Zeidenberg.

**16.** While real estate appraisals do not reflect the price at which property can be sold presently, they nonetheless are relevant evidence as to value of property. An appraisal of the Roger Sherman School prepared for the City of New Haven in February, 1982 stated that the property was worth $50,000 to $75,000 if reused for institutional purposes and $64,000 for other uses. Plaintiffs' Exhibit 7.

**17.** This conclusion is supported by the comments of Alderwoman Azzaro, who in moving to reduce the sale price to $1, stated "Seeing that the school is in that terrible condition and that they [The Gan] need so much money to fix it, why don't we either sell it to them for a dollar or give it to them for nothing?" Plaintiffs' Exhibit 5 at 24.

**18.** Inasmuch as plaintiffs have shown the challenged transaction failed two prongs of the test for violation of the Establishment Clause, there is no need to decide if the transaction also led to excessive entanglement between the city government and The Gan.

for school with The Gan. Therefore, the Court orders that, pending final resolution of this case, (1) The Gan may continue to use the Roger Sherman School on the condition that it pay into an escrow account on a monthly basis the reasonable rental value for the property, as determined by agreement of the parties or, if they cannot reach agreement, by the Court. (2) All such rental payments placed in escrow shall be disposed of upon termination of this case. (3) In the event the sale to The Gan is ultimately rescinded, such rental payments will be paid to the city and not credited toward the purchase price of the property. (4) Repairs and renovations to the property by The Gan shall be undertaken by it as lessee and not as owner.

In addition to the foregoing, counsel for the parties are ordered to appear in chambers for a status conference on August 31, 1982 at 4:00 p.m.