**Donald L. CREATORE & Knights of Columbus Council No. 2961**

v.

**The TOWN OF TRUMBULL, CONNECTICUT & David A. Wilson, Trumbull First Selectman.**

**Civ. No. 3:94CV2143 (AHN).**

United States District Court, D. Connecticut.

Dec. 21, 1994.

John K. Knott, Jr., Cheshire, CT, Kevin Hasson; and Pat A. Cipollone, Washington, DC, for plaintiffs.

Arthur A. Hiller, Gordon & Hiller; and Martin Margulies, Quinnipiac College School of Law, Bridgeport, CT, for defendants.

## CORRECTED RULING ON PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION

NEVAS, District Judge.

This written ruling memorializes the court's oral ruling delivered this morning.

At the outset, the court reiterates its comments of yesterday: this is *not* an easy case. It is troublesome not only from a legal perspective, in that it requires intricate legal analysis, but also from an emotional perspective. As Judge Burns acknowledged in *Annunziato v. New Haven Bd. of Aldermen,* 555 F.Supp. 427, 429 (D.Conn.1982) and again in *Libin v. Town of Greenwich,* 625 F.Supp. 393, 399 (D.Conn.1985), cases touching on the relationship between government and religion "focus our attention on strongly held and conflicting values" and are often emotionally charged.

With this in mind, the court now makes its findings of fact and sets forth its conclusions of law.

### FINDINGS OF FACT

1. The plaintiffs are Donald L. Creatore, a citizen of Trumbull, and the members of Knights of Columbus, Council No. 2691, a private organization of which Mr. Creatore is a member.

2. The defendants are the Town of Trumbull, Connecticut ("the Town") and David A. Wilson, Trumbull First Selectman.

3. The plaintiffs filed an application for a temporary restraining order ("TRO") against these defendants on December 16, 1994, seeking to erect a creche on the public Green adjoining the Trumbull Town Hall. The action was brought pursuant to 42 U.S.C. § 1983, and alleges that the defendants' denial of permission to erect the creche violates the plaintiffs' First Amendment rights.

4. The parties have stipulated that the Trumbull Town Green, hereinafter, "the Green," is a traditional public forum.

5. In November, 1993, the plaintiffs sought permission to erect a creche on the Green but permission was denied.

6. In early 1994, the plaintiffs again sought permission to erect the creche. On

May 9, 1994, First Selectman Wilson granted permission for the erection of the creche by way of a letter sent to Mr. Creatore. The letter stated: "I wish to acknowledge your recent letter concerning the placement of a creche on town hall Green in conjunction with our Annual Green Lighting Programs. I have no objection to your plans...."

7. The letter from First Selectman Wilson permitting the erection of the creche requested that Mr. Creatore submit plans to a Town building official for approval. Those plans were submitted and, on August 18, 1994, they were approved.

8. The creche was to be erected on December 17, 1994.

9. On December 14, 1994, First Selectman Wilson telephoned Mr. Creatore and revoked permission for the erection of the creche. He followed this call with a letter dated December 14, 1994.

10. The proposed site of the creche was on the Green, very near to the front entrance of the Town Hall. The proposed creche was to be approximately four feet by six feet large, and the figures were to be approximately one and one half feet tall. The creche was to be illuminated at night. No agreement was reached between the plaintiffs and the Town as to any sign to accompany the creche.

11. The Green has been used for many years as the location for a wide variety of events, both religious and secular. These events include an annual art fair, an international food festival, Veteran's and Memorial Day commemorations involving both religious content and the laying of a wreath, and a National Prayer Day.

12. In addition, for the last approximately sixteen years, a Menorah and a Christmas tree have stood together on the Green during the holiday season. The Menorah was erected by a private religious group. The Christmas tree was decorated by the Town, and a private group has participated in a Christmas tree lighting celebration. The tree that is decorated is a permanent part of the landscape and is approximately 150 feet tall.

13. In 1993, a Menorah and a Christmas tree and a large wooden sign reading, "Seasons greeting. Peace and Liberty for all," were displayed on the Green.

14. This year, that is, 1994, the menorah was not displayed on the Green because the private group that sponsored it in past years chose not to erect it there.

15. A lighted Christmas tree is currently being displayed on the Green.

16. On December 14, 1994, a new Town policy barring the display of solitary, unattended religious symbols on the Trumbull Town Green was instituted, but was not publicly announced.

17. The only government involvement with the proposed display of the creche, which is entirely privately sponsored, would be the granting of permission to allow it on government property.

18. The court visited the site of the proposed creche on December 17, 1994.

19. The court adopts the stipulation of facts entered into between the parties and made a part of the record at the start of this hearing, which began yesterday, December 19, 1994, and continues this morning for the announcement of the court's ruling.

## CONCLUSIONS OF LAW

1. This action is before the court on an application for a TRO. By agreement, the court will treat the plaintiffs' application as one for a preliminary injunction.

2. "A party seeking preliminary injunctive relief must establish (a) that the injunction is necessary to prevent irreparable harm and (b) either that (i) it is likely to succeed on the merits of the underlying claim or (ii) there are sufficiently serious questions going to the merits of the claim as to make it a fair ground for litigation and that the balance of the hardships tips decidedly toward the movant." *Eng v. Smith,* 849 F.2d 80, 81–82 (2d Cir.1988).

3. The court finds that the plaintiffs have satisfied the first prong of this test. It is well-settled that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S.

347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976).

4. The court now considers the likelihood that the plaintiffs' claim will succeed on its merits.

5. The plaintiffs seek to erect the creche on the Town Green, a conceded "traditional public forum." Traditional public fora are those that "have immemorially been held in trust for the use of the public, and time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983).

6. It is undisputed that the creche is a religious symbol.

7. It is undisputed that the creche constitutes symbolic speech.

8. It is also undisputed that permission for the erection of the creche was revoked due to the religious content of that symbolic speech.

■ 9. The government may enforce a content-based exclusion on speech in a traditional public forum only if that exclusion is "necessary to serve a compelling state interest" and is "narrowly drawn to achieve that end." *Perry*, 460 U.S. at 45, 103 S.Ct. at 955.

10. The Town argues that its content-based exclusion of the creche serves its interest in avoiding a violation of the Establishment Clause of the First Amendment and that excluding solitary, unattended displays of religious symbols from the Green is a narrowly tailored means to achieve that end.

11. The court must therefore consider whether, if the Town were to permit the creche, it would violate the Establishment Clause. In so doing, the court is guided by the test articulated in *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). Under *Lemon*, the grant of permission to erect the creche on the Green would not violate the Establishment Clause if the Town's action (1) has a secular purpose; (2) does not have the primary effect of advancing or inhibiting religion; and (3) does not foster excessive entanglement with religion.

■ 12. The court finds that there is no serious dispute as to whether the Town's action in granting permission for the erection of the creche would fail the first and third prongs of the *Lemon* test. Granting permission would advance the secular purpose of maintaining a public forum open to all speech regardless of content. *See, e.g., Widmar v. Vincent*, 454 U.S. 263, 271–72, 102 S.Ct. 269, 275–76, 70 L.Ed.2d 440 (1981) (finding that "an open-forum policy, including nondiscrimination against religious speech, would have a secular purpose"). In addition, there is no basis in the record to support a finding of excessive entanglement; it is undisputed that the only government involvement with the proposed project is the granting of permission.

■ 13. The Town's primary objection is that to allow the creche would violate the *Lemon* test's second prong. To determine whether the creche would have the primary effect of endorsing religion, the court must consider the display of the creche in its "particular setting." *County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter*, 492 U.S. 573, 597, 109 S.Ct. 3086, 3103, 106 L.Ed.2d 472 (1989). This is a very fact-intensive inquiry. *See, e.g., Lee v. Weisman*, —— U.S. ——, ——, 112 S.Ct. 2649, 2661, 120 L.Ed.2d 467 (1992) (observing that "[o]ur Establishment Clause jurisprudence remains a delicate and fact-sensitive one"). As part of this inquiry, the court considers what a reasonable observer would perceive when he or she evaluates whether the creche conveys a message of government endorsement of religion. *Allegheny*, 492 U.S. at 630, 109 S.Ct. at 31. This reasonable observer is familiar with and takes into account the government's historical practice with respect to the challenged action. *See id.*

14. Based on the record, the court finds that while some factors make it less likely that a reasonable observer would perceive that Trumbull was endorsing Christianity, other factors suggest that the reasonable observer would attribute the creche to the

Town and infer that it was endorsing religion.

15. The court agrees with the plaintiffs that it is significant that the Green is a traditional public forum. The Green has, in the past, been open to many different uses, including religious uses. The record reflects that "live" religious speech has taken place on the Green, as on National Prayer Day and at the Memorial and Veteran's Day commemorations. The record also reflects that "symbolic" religious speech has taken place on the Green, as exemplified by the Menorah and Christmas tree displays of previous years.

16. Thus, a reasonable observer, familiar with the prior uses of the Green and its status as a traditional public forum, would take these factors into consideration when forming a conclusion as to whether the Town is endorsing Christianity. *See, e.g., Kreisner v. City of San Diego,* 1 F.3d 775, 784 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 690, 126 L.Ed.2d 657 (1994) (assuming "that the reasonable observer is aware of [the] Park's public forum nature and the City's first-come, first-served permit policy").

17. Other factors, however, suggest that the reasonable observer would conclude that the Town was endorsing religion. Among these is the creche's proposed location on the Green near to the front entrance of the Town Hall. The Green abuts Town Hall. This close proximity to the seat of government carries a great risk of misattribution, suggesting that the reasonable observer will in fact perceive that Trumbull is endorsing Christianity.

18. In addition, no agreement was reached between the plaintiffs and the Town with respect to the erection of any signs, by the Town or the plaintiffs or both, that would indicate the creche's private sponsorship and/or the Town's neutrality towards the creche's religious content. The court finds that the fact that the creche would be unattended and that nothing at the site would fulfill the role of a live speaker increases the likelihood that the creche would be misattributed to the Town.

19. In short, nothing in the context of the creche, including the arguably secular symbol of the nearby Christmas tree, secularizes the creche's undeniably religious message, or detracts from the fact that this religious symbol is overwhelmingly surrounded by the presence of government. *See Allegheny,* 492 U.S. at 573, 597, 109 S.Ct. at 3089–90, 3103 (finding that "nothing in the context of the display [of the creche] detracts from the creche's religious message").

20. Given these facts, the court finds that this case is governed by *Kaplan v. City of Burlington,* 891 F.2d 1024 (2d Cir.1989), *cert. denied,* 496 U.S. 926, 110 S.Ct. 2619, 110 L.Ed.2d 640 (1990). *Kaplan* found that an unattended, solitary display of a large menorah in a park *adjacent to City Hall,* a traditional public forum, violated the Establishment Clause. The court emphasized that City Hall Park is "public property closely associated with a core government function." *Kaplan,* 891 F.2d at 1028. The *Kaplan* court, quoting the United States Supreme Court in *Allegheny,* wrote that in light of the Menorah's location " '[n]o viewer could reasonably think that it occupies this location without the support and approval of the government.' " *Kaplan,* 891 F.2d at 1030 (quoting *Allegheny,* 492 U.S. at 599–600, 109 S.Ct. at 3104–05). *See also Flamer v. City of White Plains,* 841 F.Supp. 1365, 1376 (S.D.N.Y.1993) (acknowledging that "[i]solated religious displays on *some* public properties may indeed send a message of government endorsement of religion") (emphasis added).

21. The analysis set forth in *Kaplan* was reaffirmed by the Second Circuit in *Chabad–Lubavitch of Vermont v. Burlington,* 936 F.2d 109 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3026, 120 L.Ed.2d 897 (1992). *Chabad* followed *Kaplan* in holding that the display of a Menorah in City Hall Park, a traditional public forum, violated the Establishment Clause. The Court of Appeals again focused on the Menorah's status as " 'an unattended, solitary religious symbol' " located in a park " 'close[ly] associat[ed] with the seat of city government.' " *Chabad,* 936 F.2d at 112 (quoting *Kaplan,* 891 F.2d at 1030).

22. The court also notes that the Second Circuit does not stand alone in adopting this

view. The Fourth Circuit, in *Smith v. County of Albemarle, Va.*, 895 F.2d 953 (4th Cir.), *cert. denied*, 498 U.S. 823, 111 S.Ct. 74, 112 L.Ed.2d 48 (1990), held that the County could not permit the Jaycees to erect a creche on the lawn of a county office building without violating the Establishment Clause. The Fourth Circuit approved of the District Court's analysis, including its focus on the fact that the creche was displayed in the context of a government site where "one could not readily view the creche without also viewing the trappings and identifying marks of the state." *Smith*, 895 F.2d at 955.

23. The court further finds that the case at bar is distinguishable from *McCreary v. Stone*, 739 F.2d 716 (2d Cir.1984), *aff'd*, 471 U.S. 83, 105 S.Ct. 1859, 85 L.Ed.2d 63 (1985) and *Flamer v. City of White Plains*, 841 F.Supp. 1365 (S.D.N.Y.1993), because those cases involved public parks that were *not* closely associated with seats of government. By contrast, the Trumbull Green *abuts* the seat of government; to paraphrase *Kaplan*, the Trumbull Green "is not any [Green], but rather [Town Hall Green]." *Kaplan*, 891 F.2d at 1029.

24. This factual distinction also distinguishes two recent cases from other circuits, *Kreisner v. City of San Diego*, 1 F.3d 775, 776 (9th Cir.1993), which held that a city may permit a private free-standing religious display in a traditional public forum *"removed from the seat of government"* without violating the Establishment Clause (emphasis added), and *Doe v. Small*, 964 F.2d 611, 619 (7th Cir.1992), which found that "the mere presence of religious symbols in a public forum does not violate the Establishment Clause, since the government is not presumed to endorse every speaker that it fails to censor in a quintessential public forum *far removed* from the seat of government." (Emphasis added).

25. In sum, while the public forum consideration is an important one, it is insufficient to dispel the message of endorsement that would be conveyed by a lighted creche, situated next to a Christmas tree, located in a highly visible spot directly in front of the Town Hall. As *Kaplan* found, the fact that the solitary, unattended religious symbol is located in a traditional public forum is "simply a factor to be taken into account in determining whether the context of the display suggests government endorsement," *Kaplan*, 891 F.2d at 1029, and the court finds that it is not a sufficient factor to remove the display's message of governmental endorsement of religion in the context at issue here. *Compare Chabad–Lubavitch of Georgia v. Miller*, 5 F.3d 1383, 1396 (11th Cir.1993) (Anderson, J., concurring) (noting that the majority's analysis treated the fact that the religious display was located in a public forum as "the single most significant factor" indicating that a reasonable observer would not perceive a message of government endorsement of religion).

26. The court therefore finds that, on balance, for the Town to allow the creche would have the primary effect of advancing religion and thus would violate the Establishment Clause.

27. The court must now consider whether the Town's policy of excluding displays of solitary, unattended religious symbols from the Green is narrowly tailored to achieve its interest in avoiding an Establishment Clause violation. Again following *Kaplan*, the court concludes that it is. The *Kaplan* court, addressing Burlington's denial of permission to erect a Menorah in City Hall Park, stated that such a "prohibition on the display of unattended, solitary religious symbols would not run afoul of the constitutional requirement that 'content-based exclusions' be 'necessary to serve a compelling state interest' and be 'narrowly drawn to achieve that end.'" *Kaplan*, 891 F.2d at 1030 (quoting *Widmar*, 454 U.S. at 270, 102 S.Ct. at 274).

28. The Town's policy is narrowly tailored to avoid an Establishment Clause violation in that it is limited to displays of religious symbols, and is further limited to displays of those symbols on the Green. Indeed, there was testimony that the Town might take a different position on requests to place solitary, unattended religious displays in other Town-owned public parks where the displays would also be highly visible.

29. In view of the foregoing, and in particular the court's view that *Kaplan* controls the instant action, the court finds that the plaintiffs have failed to show a likelihood of success on the merits.

30. Accordingly, the plaintiffs' application for a preliminary injunction is hereby DENIED.

SO ORDERED.