**J. R. FULTON et al., Plaintiffs-Appellants,**

v.

**EMERSON ELECTRIC CO. et al., Defendants-Appellees.**

No. 27122.

United States Court of Appeals
Fifth Circuit.

Dec. 22, 1969.

528

Irving Abramson, Gen. Counsel, Int'l Union of Electrical Radio and Machine Workers, Ruth Weyand, Assoc. Gen. Counsel, Washington, D. C., Dixon L. Pyles, Jackson, Miss., for appellants.

Earl T. Thomas, Jackson, Miss., Herman W. Alford, Laurel G. Weir, Philadelphia, Miss., Walter W. Eppes, Jr., William J. Gunn, Meridian, Miss., Robert H. McRoberts, Gaylord C. Burke, St. Louis, Mo., for appellees.

Before JOHN R. BROWN, Chief Judge, and JONES and CARSWELL, Circuit Judges.

PER CURIAM:

Here employees of Emerson Electric's Philadelphia, Mississippi plant seek reversal of the District Court's judgment dismissing their claims under the Civil Rights Acts — 42 U.S.C.A. §§ 1983, 1985 and 1986. In the District Court plaintiffs sought relief against Emerson Electric, various public officials of the City of Philadelphia and Neshoba County, Mississippi, and a group of private citizens of Neshoba County, including employees of Emerson Electric and the editor of the *Neshoba Democrat* a local newspaper. The relief sought was for alleged interference with plaintiffs' rights of freedom of speech and assembly and statutory Section 7 rights to organize labor unions. 29 U.S.C.A. § 157.

As is too often the case when claims are dismissed on the pleadings,[1] the District Court's dismissal was premature. The District Court held that the pleadings did not state a claim because they did not allege the "state action" necessary under the Civil Rights Acts. Much of this seems traceable to the impression gained by the trial court from arguments successfully pressed on it by the defendants, and renewed with like vigor here, that this is a case seeking damages and other relief for a physical assault physically committed against plaintiffs by fellow employees of Emerson in which none of the enumerated defendants had any immediate participation. In addition, the District Court held that relief could not be granted because the

claims were "within the exclusive jurisdiction of the National Labor Relations Board."

When the pleadings are given a *Conley*[2] reading, it is, however, apparent that sufficient "state action" has been alleged. The gravamen of the complaint was that one or more or all of the public officials, private citizens, and the company took concerted action to deprive plaintiffs of an opportunity to attempt to organize a union in the company's plant.[3] It was, of course, specifically alleged that (i) the union spokesmen were beaten when they attempted to distribute literature, and that (ii) the beating was a product of the alleged concerted action, and that (iii) the public officials acquiesced[4] in these assaults.[5] But it

1. See Pred v. Board of Public Instruction of Dade County, Fla., 5 Cir., 1969, 415 F.2d 851, 852, n. 1.

2. Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80. See also Pred v. Board of Public Instruction, etc., 5 Cir., 1969, 415 F.2d 851, 854 n. 11; Gomez v. Florida State Employment Service, 5 Cir., 1969, 417 F.2d 569, 578–579.

3. The directness with which these fundamental, constitutional claims were asserted is illustrated by paragraphs 9 and 10 of the complaint:

   "9. To frustrate the efforts of Plaintiffs the Defendants have joined together among themselves with officers and agents of the Company, and with persons whose identities are not now known to the Plaintiffs, intentionally to discriminate against the Plaintiffs and to deprive them, and to cause them to be deprived—under color of statutes, ordinances, laws, customs and usages of the town of Philadelphia, County of Neshoba and State of Mississippi—of their rights, privileges and immunities secured by the First and Fourteenth Amendments to the Constitution of the United States—including but not limited to, their right to freedom of speech, press, choice, vote and assembly secured by said Amendments, and to the equal protection of the laws within the State of Mississippi, and their privileges and immunities under said Amendments, as United States citizens, to disseminate and receive information concerning federal legislation and to assemble peaceably for the discussion of federal legislation.

"10. Acting jointly, as aforesaid, the Defendants and others whose identities are not now known to Plaintiffs—acting under color of Mississippi law and authority—have taken action, or caused or instigated action to be taken—likewise under color of Mississippi law and authority—depriving Plaintiffs of their constitutional rights referred to in subparagraph 9 above."

4. At least at this stage it cannot be ruled out that the proof might permit acquiescence in such assaults to supply the requisite state action. See Burton v. Wilmington Parking Authority, 1961, 365 U.S. 715, 725, 81 S.Ct. 856, 861, 6 L.Ed. 2d 45, 52 where the Court says:

   "But no State may effectively abdicate its responsibilities by either ignoring them or by merely failing to discharge them whatever the motive may be * * *. By its inaction, the Authority, and through it the State, has not only made itself a party to the refusal of service, but has elected to place its power, property and prestige behind the admitted discrimination."

5. In addition to the concerted action alleged by plaintiffs, they also attempt to demonstrate state action by allegations that the Emerson Electric Philadelphia plant was financed under the Mississippi industrial revenue bond program administered by that State's "A & I Board". It is, however, unnecessary for us to here pass on whether such state financial participation is sufficient "state action" under the Civil Rights Acts to state a claim for which relief can be granted when other actions not directly connected with the

was much more than a case in which plaintiffs were seeking to impose liabilities on all or some of the defendants for an assault which, on a total reading of the complaint, is but a manifestation of the concerted action asserted.

■ Concerted action of private parties and state officials has consistently been held to be sufficient allegation of "state action" for 42 U.S.C.A. § 1983 and § 1985, United States v. Price, 1966, 383 U.S. 787, 793, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267, 272; Gomez v. Florida State Employment Service, 5 Cir., 1969, 417 F.2d 569, 578–579; Baldwin v. Morgan, 5 Cir., 1961, 287 F.2d 750; Boman v. Birmingham Transit Co., 5 Cir., 1960, 280 F.2d 531.

■ The District Court was also mistaken in applying the doctrine of the preemption of labor matters by the NLRB. It is true that "as a general rule, neither state nor federal Courts have jurisdiction over suits directly involving 'activity [which] is arguably subject to § 7 of § 8 of the Act.'" San Diego Building Trades Council v. Garmon, 1959, 359 U.S. 236, 245, 79 S.Ct. 773, 780, 3 L.Ed.2d 775, 783. But like all "general rules" the doctrine of the NLRB's preemption is subject to exceptions. See e.g., Linn v. Plant Guard Workers, etc., 1966, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582; Vaca v. Sipes, 1967, 386 U.S. 171, 87 S.Ct. 903, 17 L. Ed.2d 842. Thus the preemption of federal and state Court jurisdiction over a particular class of cases depends "upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies of concurrent judicial and administrative remedies." Vaca v. Sipes, *supra,*

386 U.S. at 180, 87 S.Ct., at 911, 17 L. Ed.2d at 852.

■ The particular interests involved here may include those employee-employer relationships that the NLRB was established to deal with. But many more interests are also involved. The dispute is not just between an employee and his employer: it is also between citizens and those who control the political institutions of a whole community.[6] The relationship is not just employee-employer, but individual and the state through participation of state officers in actions by private persons. The NLRB was not intended to deal with such problems. Indeed, it could afford no relief as against any party but the employer. The problems alleged here are of constitutional proportions—an area where Courts always have a role. Vaca v. Sipes, *supra.* See also, International Union, United Automobile Workers of America (UAW-CIO) v. Russell, 1957, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030.

Bearing upon both dismissal on the pleadings and preemption it deserves emphasis that this case is one presenting delicate and far reaching questions. Questions that demand full-bodied records for disposition. Public Affairs Associates, Inc. v. Rickover, 1962, 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604. Thus, at least on the record that now comes to us, we cannot say that plaintiffs could not prove facts that would entitled them to relief. We therefore return this case to the District Court, but we do so without even a whisper as to what the ultimate result should be.

Reversed and remanded.

---

financing are alleged. But see Burton v. Wilmington Parking Authority, 1961, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45.

**6.** This community has been the locale for other civil rights controversies. See

United States v. Price, 1966, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267; Posey v. United States, 5 Cir., 1969, 416 F.2d 545.