Robert O'GRADY and Angeles O'Grady

v.

CITY OF MONTPELIER; Montpelier City Department of Public Works; Stephen A. Gray, Director of Public Works; Richard W. Curtis, Mayor, City of Montpelier; Charles B. Nichols, Jr., Norman J. Coates, Gordon R. Wilkinson, Carroll W. Ayer, Jr., Donald C. Rowan, H. John Lackey, Jr., Individually and in their capacities as Aldermen for the City of Montpelier during the year 1972; Roland J. Dubay, City Manager for the City of Montpelier; and Munson Earth Moving Corporation.

Civ. A. No. 76–20.

United States District Court,
D. Vermont.

June 28, 1979.

William Ryan, Ryan & Ryan, and John A. Burgess, Montpelier, Vt., for plaintiffs.

John Dinse, Dinse, Allen & Erdmann, Burlington, Vt., for defendant Munson Earth Moving Corp.

W. Edson McKee, McKee, Guiliani & Cleveland, Montpelier, Vt., for all remaining defendants.

## OPINION AND ORDER

COFFRIN, District Judge.

In this action plaintiffs allege that the City of Montpelier, certain city officials, and the Munson Earth Moving Corporation ("Munson") have deprived them of the use and enjoyment of income-producing property in violation of the due process and just compensation guarantees of the fifth and fourteenth amendments to the Constitution. Suit is brought directly under the fourteenth amendment on the jurisdictional base of 28 U.S.C. § 1331(a), and under the Civil Rights Act, 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3). The court now addresses the motion for summary judgment of defendant Munson, the only non-governmental defendant named in the complaint. Defendant Munson has set forth a number of arguments pertaining to this motion which we do not find it necessary to resolve. For the reasons given below, the court finds that a cause of action will not lie against defendant Munson for the constitutional violations alleged here; we grant defendant's motion.

Plaintiffs' allegations raise two distinct claims against defendant Munson: (1) that Munson violated the plaintiffs' right to just compensation under the fifth and fourteenth amendments by causing damage to their property without payment therefore; and (2) that Munson's actions violated the plaintiffs' due process rights because defendants changed the road grade without meeting the notice and hearing requirements set forth in the Montpelier City Charter. We will address these allegations in turn below.

■ The complaint in this action alleges that repeated flooding of plaintiffs' garages following construction work on East State Street deprived plaintiffs of their property without just compensation in violation of the fifth and fourteenth amendments to the United States Constitution. Although continuous or repeated flooding of property may give rise to a cause of action for inverse condemnation, *see United States v. Kansas City Life Insurance Co.,* 339 U.S. 799, 70 S.Ct. 885, 94 L.Ed. 1277 (1950); *Jensen v. State,* 136 Vt. 200, 388 A.2d 421 (1978), it is well established that such a cause of action will lie only against a public body or corporation authorized to exercise the power of eminent domain. An action for inverse condemnation will not lie against a private contractor who merely performs a construction contract for the government in accordance with authorized governmental specifications.

The leading case on this subject, *Yearsley v. Ross Construction Co.,* 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940), was an inverse condemnation action by persons who lost land by erosion which resulted from a federally-funded navigation improvement project. Finding that the United States authorized and directed the defendant contractor's work, the Court held that if the government had valid authority to carry out the project, there would be "no liability on the part of the contractor for executing its will," *id.* at 21, 60 S.Ct. at 414 (citations omitted). Courts have applied the principle in a variety of factual circumstances analogous to the situation presented here. *Myers v. United States,* 323 F.2d 580 (9th Cir. 1963), involved a claim of inverse condemnation due to the construction of a road allegedly wider than the legal right of way.

The court denied any recovery against the defendant construction company, stating:

> To the extent that the work performed by [the contractor] was done under its contract with [the government], and in conformity with the terms of said contract, no liability can be imposed upon it for any damages claimed to have been suffered by the appellants.

*Id.* at 583. *See also York Cove Corp. v. United States,* 317 F.Supp. 799, 810 (E.D.Va.1970) (private contractor not liable for damage to plaintiff's property caused by public works construction if damage resulted necessarily or incidentally from carrying out contract according to its terms); Annot., 9 A.L.R.3d 382 (1966).

The court finds additional authority for the proposition that a cause of action for inverse condemnation will not lie against a private corporation carrying out publicly-controlled activities in the line of cases applying the takings clause to the operation of public airports. In *Griggs v. Allegheny County,* 369 U.S. 84, 89, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962), the Supreme Court found that the local governmental operator of an airport had "taken" an overflight easement from the plaintiff for which compensation must be paid, but explicitly held that the private airline companies involved in the overflights were not liable for the taking. The lower federal courts have consistently applied this reasoning to airline overflight cases, holding that even though the public airport agency might be liable for a taking, "the airlines are under no independent duty to make compensation on the theory that the taking . . . was effected with the aid of the airlines." *Luedtke v. County of Milwaukee,* 371 F.Supp. 1040, 1043 (E.D.Wis.1974), *aff'd,* 521 F.2d 387 (7th Cir. 1975). *See Town of East Haven v. Eastern Airlines, Inc.,* 331 F.Supp. 16 (D.Conn.1971).

The court finds the logic of these cases applicable to and dispositive of the present motion. It is undisputed that defendant Munson entered into a contract with the City of Montpelier for the construction of the East State Street project and that Munson did the work in accordance with detailed specifications provided by the City. Affidavit of Randall G. Munson (filed Sept. 28, 1976). Plaintiffs do not allege that Munson acted outside the scope of authority granted it by the City or that Munson negligently failed to perform its contractual obligations. Indeed, plaintiffs' chief argument on the state action question has been that the city closely controlled Munson's actions. In these circumstances, the court finds that no cause of action for inverse condemnation can lie against defendant Munson, whether plaintiff sues directly under the Constitution or under 42 U.S.C. § 1983.[1]

■ Plaintiffs' second line of argument is that the City deprived them of due process

---

1. Because claims for the public taking of private property have traditionally been cognizable in federal court directly under the fifth and fourteenth amendments, much of the case law on these issues has evolved without explicit discussion of the statutory terms employed in § 1983. *See Lenoir v. Porters Creek Watershed District,* 586 F.2d 1081, 1094–96 (6th Cir. 1978). The constitutional cases discussed in the text do not elaborate on the precise source of the immunity given to private contractors in takings cases and do not discuss § 1983 at all. Nevertheless, we are convinced that the scope of the protection afforded to property owners ought to be equal whether they sue under § 1983 or directly under the Constitution. This decision comports with our reading of the statute as well as our understanding of the cases noted above. As we have recently stated, "[i]n enacting § 1983, Congress did not intend to impose strict liability for constitutional torts."

*Ohland v. City of Montpelier,* 467 F.Supp. 324, 340 (D.Vt.1979). Rather, § 1983 "should be read against the background of tort liability," *Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961), and in takings cases, this background includes the doctrine of the contractor's immunity. That doctrine is undoubtedly based on judicial reluctance to create a remedy effectively vesting a private entity with the authority of the sovereign, but it is also based on sound public policies limiting the liability of those who perform governmental contracts in accordance with their specifications and in reliance on the propriety of those specifications. For the purposes of the present motion it is unnecessary for us to decide whether the contractor's immunity has another independent base in the case law applying good faith immunities to § 1983 actions. *See Ohland v. City of Montpelier,* 467 F.Supp. 324 (D.Vt. 1979).

rights when it proceeded with the East State Street project without affording them the proper notice and hearing allegedly required by Title XII, §§ 1 and 2 of the Montpelier City Charter. An Act to Amend the Charter of the City of Montpelier, 1955 Vt. Acts, No. 329, tit. XII, §§ 1, 2 (1955). While this line of argument may have some force with respect to the City's actions in this case, with regard to defendant Munson, it is without merit. Since there is no independent constitutional requirement for notice or hearing prior to a change in grade of a public highway, *Ettor v. City of Tacoma*, 228 U.S. 148, 33 S.Ct. 428, 57 L.Ed. 773 (1913); *Hoyt v. Village of North Troy*, 93 Vt. 8, 105 A. 33 (1918), plaintiffs' due process argument rests solely upon the procedural rights created by the City Charter. But, the City Charter imposes the obligations of notice and hearing on the City alone, and the court can perceive no reason for holding an independent private contractor liable for the City's alleged procedural violations. Plaintiffs have alleged neither direct involvement by defendant Munson in these procedural violations, nor any conspiracy that would give rise to a cause of action under 42 U.S.C. § 1985. Nor is this a situation where the private defendant has taken over the state's responsibilities to such an extent that it can be said to have accepted the procedural burdens imposed on their implementation. *See, e. g., Perez v. Sugarman*, 499 F.2d 761 (2d Cir. 1974). If the City had any procedural obligations to the plaintiffs under the City Charter, the City alone has the responsibility to fulfill them. The Supreme Court has held that § 1983 does not create a cause of action for vicarious liability for constitutional torts, *Monell v. Department of Social Services*, 436 U.S. 658, 691–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus Munson cannot be liable for any constitutional deprivation caused by the City. Since we do not find any breach of duty of constitutional magnitude by defendant Munson, the complaint states no cause of action for the deprivation of due process by that defendant.

For the foregoing reasons, defendant Munson's Motion for Summary Judgment is granted.