**Frank R. ANNUNZIATO, et al.,**
**Plaintiffs-Appellees,**

v.

**THE GAN, INC., Defendant-Appellant.**

**No. 671, Dockets 83–7612, 83–7634.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 1, 1984.

Decided June 26, 1984.

Roger J. Frechette, New Haven, Conn., for defendant-appellant.

Martin Margulies, Bridgeport, Conn. (Martha Stone, Connecticut Civil Liberties Union Foundation, Hartford, Conn., of counsel), for plaintiffs-appellees.

Nathan Lewin, Washington, D.C. (Dennis Rapps, Daniel D. Chazin, Nat. Jewish Commission on Law and Public Affairs, New York City, of counsel), amicus curiae.

Before LUMBARD, OAKES and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

This litigation arose out of the sale of The Roger Sherman School. This second oldest public school in New Haven, Connecticut is an elementary school for children from kindergarten to fifth grade and bears the distinguished name of one of Connecticut's representatives to the Constitutional Convention of 1787.

Plaintiffs are all New Haven residents. Some are members of a citizens group protesting New Haven's practice of disposing of its surplus property—which the group claims amounts to a municipal give-away. A few of the plaintiffs are parents of children who formerly attended the Roger Sherman School. All joined together to object to the closing and sale of this school to The Gan. The Gan is a religious corporation that conducts an institution for Hebrew and general education. Pursuant to its charter, The Gan operates a day school for preschool and elementary school children of the Jewish faith who reside in Greater New Haven.

As a result of the City's sale of the Roger Sherman School to The Gan, plaintiffs instituted this action under 42 U.S.C. § 1983 claiming that the sale violated their constitutional rights. Plaintiffs sought an injunction to prevent the transfer or use of this property by The Gan, and named as defendants the City of New Haven, its Mayor, the Board of Aldermen and its members, the New Haven Board of Education, and The Gan. The complaint and the amended complaint alleged that the sale was an advancement of religion in violation of plaintiffs' rights under the Establishment Clause of the First Amendment. Plaintiffs made other constitutional claims and The Gan responded with equally serious assertions of constitutional privilege, *i.e.*, that its free exercise of religion was threatened by the selective prosecution of this lawsuit against it.

Despite the amount of acrimony and heat generated by the parties, when sifting through the resulting shroud of smoke, there is but little fire remaining, since the substantive litigation between the parties has already been settled. Hence, we need not and do not address any of these constitutional allegations. What remains for us to pass upon is the propriety of an award of counsel fees under 42 U.S.C. § 1988. Following the settlement, The Gan was ordered by the United States District Court for the District of Connecticut (Burns, J.) to pay a portion of plaintiffs' attorney's fees for its role in defending the underlying lawsuit brought against it and the municipal defendants. Since the factual context in which this case arose is critical, we set it forth in some detail.

## I *Background*

In recent years the City of New Haven has been forced for economic reasons to close a number of school buildings because of declining student enrollments. In 1981 the Board of Education commissioned two studies to identify additional school buildings for closing. The consulting firm of Coopers and Lybrand conducted the first study and recommended shutting three schools, including the subject Roger Sherman School. The second study, conducted by the Board itself, also concluded that the Roger Sherman School should be shut down, based upon the estimate that over $335,000 [1] of capital expenditures were needed to keep the school open. As a result of these recommendations, the New Haven Board of Education voted on January 25, 1982 to close up the Roger Sherman School at the end of the 1981–82 school year.

Like other urban centers the City of New Haven encounters difficult dilemmas regarding the schools it takes out of service. At the time of the hearing in this case, the City had approximately 14 non-functional buildings in its surplus property inventory, some of which had not been used for over ten years. In order to prevent further deterioration of these idle structures, the City must heat and maintain them. The escalating costs of these services for these mostly older and energy inefficient buildings are exacerbated by acts of vandalism, graphically revealed by the photographs in this record. In short, the buildings are eyesores and burdensome to the public fisc. To meet this problem, New Haven adopted a program to encourage urban revitalization. To implement the plan and encourage would-be buyers of its surplus property, the City sold various parcels of its real estate for one dollar to a wide variety of organizations pursuant to rehabilitation agreements. In addition, the City sold other parcels at prices far below its own acquisition costs. These sales furthered the City's rehabilitation goals. Although the cash inflow from these sales had little positive impact upon the City's financial position, they nevertheless served to stem the City's plight of being required to throw good money after bad. At the onset of this litigation, these practices had been long in effect.

It was at this juncture that The Gan expressed its interest in acquiring the Roger Sherman School. As a nonprofit organization operating an Orthodox Jewish Day School, The Gan commenced holding classes for children in 1977. At that time it used rented quarters. In 1982 it sought new quarters because its lease was due to expire, and because the school's enrollment had grown. On January 26, 1982 The Gan learned from published stories that the City had decided to close the Roger Sherman School and promptly wrote the Mayor offering to buy it for $30,000. The Gan indicated the need for a ready response to its proposal because of the imminent expiration of its lease. Advantages that could inure to the City, were The Gan to purchase the Roger Sherman School, were also highlighted in the letter. For example, the City would be relieved of the costs associated with heating, maintaining and protecting an idle building, which amounted to approximately $50,000 per annum, and the sale would aid the City's revitalization program.

---

**1.** The September 1981 Report of the Mayor's Education Management Task Force indicated that it was imperative for the quality of New Haven's educational program that certain facilities, including the Roger Sherman School, be closed. While the report fully recognized that "[s]chool closings are an emotional issue", in its decision to close a school, the Task Force considered a variety of factors, including declining enrollments, the demographics of the city and the physical condition and general attractiveness of a particular facility.

The Special Report of Capital Projects Requests for the Roger Sherman School estimated that the city would have to incur the following costs over a six year period to keep the School, which was built in 1896, in operation: door replacements ($16,800), Masonry ($90,000), Floor Coverings ($24,600), Lighting Fixtures ($2,090), Painting ($11,700), Roofing ($70,000) and Windows ($120,000).

After receiving an affirmative review in his office, the Mayor sent The Gan's proposal to the Board of Aldermen, together with his recommendation that the Board act favorably upon it. After pointing out the difficulties and "years of trial" associated with the City's past efforts to market similar structures, the Mayor noted three distinct advantages of the proposal that would accomplish many of the City's primary goals: first, the immediate occupancy of the building would eliminate any possibility of vandalism to the structure; second, the building would remain in use as a school; and third, the sale to The Gan would insure the continued operation of a New Haven based private education center. In mid-February the City Planning Commission, to which the proposal had been referred, conducted a public hearing and unanimously approved The Gan proposal. The Commission noted particularly in its report the beneficial effect on the surrounding neighborhood that would result were The Gan to become the owner of the school. Thereafter, the Municipal Services Committee of the New Haven Board of Aldermen, after another public hearing, also voted unanimously in favor of the proposal.

The proposal was then put in the form of a resolution and submitted to the full Board of Aldermen. Alderman Zelinsky first spoke in support of selling the property to The Gan for $30,000. Alderwoman Azzaro next spoke and, of her own volition, moved to amend the resolution to reduce the purchase price to $1. The motion to amend passed by a vote of 15–12, and the amended resolution was approved by a vote of 24–2–1. By this vote the Board *unilaterally* reduced the purchase price to $1, without prior consultation with The Gan or any of its officers. The Mayor officially approved the action of the Board of Aldermen and the sale was closed on March 15, on the terms set by the Board.

Under the original terms of the contract, possession was slated for July 1, 1982, but by prior agreement of the parties, transfer of possession was advanced to June 18. On June 22 The Gan took full control of the property and began offering summer school classes to its students. After moving in, The Gan made extensive capital improvements to the school building. It constructed quarters for a resident janitor, installed a burglar alarm system and contracted for landscaping and other repairs. It intends to embark on a three phase renovation program with the bulk of the labor to be provided without charge by its members. The planned work includes upgrading the heating system, installing storm windows, improving the wiring, caulking, remodeling classrooms, replacing cracked skylights in the lavatories, upgrading the bathrooms, doing roof and gutter work, insulating, painting, pointing the brickwork, and fencing. The total cost of this rehabilitation is estimated by The Gan at $270,000.

## II  *The Lawsuit*

In June 1982 the plaintiffs filed the instant action. They sought an injunction from the district court to prevent the transfer of the Roger Sherman building to The Gan and a declaratory judgment that the sale of the school violated their constitutional rights. On June 25, when plaintiffs apparently first became aware that the building had already been transferred, the complaint was amended to seek an injunction preventing The Gan from using the building. Plaintiffs additionally asked that the court restrain the municipal defendants from disposing of any other properties in the future without "fair competitive bidding."

On June 25 counsel for all parties attended a conference at which The Gan expressed its desire to withdraw from the litigation and its willingness to pay the City the full $30,000 that it had offered originally. Plaintiffs' counsel rejected this offer. The municipal defendants and The Gan then filed motions to dismiss and, after holding hearings, the district court issued its rulings on these motions and on the plaintiffs' request for a preliminary injunction. *See Annunziato v. New Haven Bd. of Alderman*, 555 F.Supp. 427 (D.Conn.

1982). The district judge rejected The Gan's motion to dismiss for failure to state a claim upon which relief can be granted. Recognizing the well-settled rule that such motion should only be granted where the plaintiff is not entitled to any relief upon any state of facts which could be proven in support of its claim, the court reasoned that "[a]lthough wholly private parties are not subject to liability under 42 U.S.C. § 1983, the Gan *would be liable* under Section 1983 *if* it acted in concert with the municipal defendants to deprive plaintiffs of their rights, privileges and immunities under the constitution." *Id.* at 432 (emphasis added). The district court found that since the complaint alleged that The Gan contracted with the City for a transfer of property in violation of plaintiffs' constitutional rights, and because the court believed that plaintiffs "may be able to prove facts sufficient to support their claim under § 1983," it denied The Gan's motion to dismiss. *Id.*

The court next considered plaintiffs' application for a preliminary injunction. After finding that plaintiffs had shown possible irreparable injury, it looked to the purpose behind the sale, and found that although the municipal defendants had legitimate reasons for selling the school to The Gan, it reached "a different conclusion ... with respect to the decision of the Board of Aldermen to forego receiving an additional $29,999 for the property." *Id.* at 433. Here, the court stated that because The Gan offered $30,000 for the property, it considered the property to be worth at least that amount, and inasmuch as the City received no benefit by reason of its reduction of the sales price, the primary effect was to benefit The Gan by relieving it of $29,999 of expected indebtedness. *See id.*

Nevertheless, because of the unusual nature of the case, the district court declined to enjoin The Gan from using the school. Instead, use of the school was permitted on condition that The Gan pay rent into an escrow account. In the event the sale were ultimately rescinded, these payments were to be paid to the City and not credited toward the purchase price. At the court's behest, the parties later agreed to a settlement and signed a consent order on September 24 which provided in part that: (1) the City was prohibited from selling any public school to a religious institution at a price less than the offer, unless there was a corresponding economic benefit to the City; (2) the sale of the building to The Gan was approved on the conditions that The Gan deliver a note to pay the City $29,999 on or before July 1, 1985 and that The Gan fulfill all the terms of the original contract approved by the municipal defendants on March 5, 1982; and (3) The Gan was not to resell the building for three years.

### III  *The Plaintiffs' Application for Fees*

On November 19, 1982 the plaintiffs moved for attorney's fees under 42 U.S.C. § 1988 against both the municipal defendants and The Gan. The Gan moved to dismiss plaintiffs' motion for fees on the ground that it had never been shown to be a state actor under 42 U.S.C. § 1983. In renewing such jurisdictional objection, the Gan asserted there was no basis for an award of fees against it. In denying the motion, the district court recognized that jurisdiction under § 1983 was a prerequisite to an award of attorney's fees under § 1988, but concluded that The Gan's position could not be sustained "in light of the now settled rule that a final finding of liability under Section 1983 is not necessary for an award of attorney's fees under Section 1988." In the court's view, the fact that this case was settled without an express or implied admission of liability by The Gan did not immunize it from a fee award. The district judge noted that its grant of a preliminary injunction contained a finding of probable success on the merits against The Gan and the municipal defendants and that this negated any conclusion that the claims against The Gan were groundless.

Subsequently, The Gan moved to certify for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b) the decision de-

nying its motion to dismiss plaintiffs' motion for costs and attorney's fees. The district court denied that motion, finding "no reason to believe an immediate appeal would materially advance this litigation." Plaintiffs thereafter amended their motion and sought an increased fee award which was eventually granted by the district court in modified form. It ordered the municipal defendants to pay $15,225 in attorney's fees and $118.35 in costs and The Gan to pay $7,468.50 in attorney's fees and $29.58 in costs.

In reaching its conclusion, the court found that plaintiffs, as the prevailing parties, had achieved "excellent results," and that there were *no* "special circumstances" which would render an award against either of the defendants unjust. The Gan had urged that the plaintiffs not be considered a prevailing party in relation to it because there was never any basis for holding it in as a party, that it never wanted to litigate, and that when it offered to pay the full $30,000 it had originally offered before the City unilaterally reduced the purchase price to $1, plaintiffs rejected such offer. Unpersuaded by this argument, the district court believed that plaintiffs did not act unreasonably in rejecting this offer since it would not have resolved the entire case, *i.e.*, presumably the claim against the municipal defendants. The court also observed that The Gan's "unsuccessful strategic decision" to defend this suit actively made it subject to liability under § 1988. At the same time, the court inferred that had The Gan stood back and adopted the neutral role of a stakeholder, it would not have been held liable for fees. In allocating the amount of fees between the defendants, Judge Burns concluded that the suit would not have arisen but for the actions taken by the City. Nevertheless, she found it reasonable to require that The Gan share in the burden of paying plaintiffs' legal fees in view of the "significant role" it played in the litigation.

Following the district court's grant of a motion to stay the judgment pending an appeal to this court, both The Gan and the municipal defendants filed notices of appeal. The municipal defendants have since elected not to pursue their appeal.

## IV  *Discussion*

### A.  *Liability under § 1983*

Title 42 U.S.C. § 1983 provides, in part, that

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

It is axiomatic that § 1983 does not provide a remedy for all constitutional injuries, but only for those caused by persons who either are state actors or acting "under color" of state law. *Rendell-Baker v. Kohn*, 457 U.S. 830, 835, 102 S.Ct. 2764, 2768, 73 L.Ed.2d 418 (1982); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948); *Civil Rights Cases*, 109 U.S. 3, 11, 3 S.Ct. 18, 21, 27 L.Ed. 835 (1883). In cases arising under § 1983, the "under color" of law requirement has consistently been viewed in the same manner as the "state action" requirement under the Fourteenth Amendment. *See Rendell-Baker v. Kohn, supra,* 457 U.S. at 838, 102 S.Ct. at 2770; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 n. 7, 90 S.Ct. 598, 1606 n. 7, 26 L.Ed.2d 142 (1970); *United States v. Price*, 383 U.S. 787, 794, n. 7, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966) (inquiry in § 1983 suits, as under the Fourteenth Amendment, is whether the alleged infringement of rights may be fairly attributed to the State); *Shirley v. State Nat'l Bank of Conn.*, 493 F.2d 739, 741 (2d Cir.), *cert. denied*, 419 U.S. 1009, 95 S.Ct. 329, 42 L.Ed.2d 284 (1974); *see also Lugar v. Edmonson Oil Company*, 457 U.S. 922, 928, 102 S.Ct. 2744, 2749, 73 L.Ed.2d 482 (1982) ("Whether they are identical or not,

the state action and under color of law requirement are obviously related"); *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). In order to state a claim under § 1983 the plaintiffs must show that the defendants acted under color of state law and caused them to be deprived of a right secured by the Constitution and laws of the United States. *Flagg Bros., Inc. v. Brooks, supra,* 436 U.S. at 155, 98 S.Ct. at 1733; *Schachter v. Whalen,* 581 F.2d 35, 36 (2d Cir.1978) (*per curiam*). Acting under color of state law is defined as the " '[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *Monroe v. Pape,* 365 U.S. 167, 184, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961) (quoting *United States v. Classic, supra,* 313 U.S. at 326, 61 S.Ct. at 1043). To act under "color of" state law for § 1983 purposes does not require that the defendant be an officer of the state. Private parties may incur liability for their conduct when the individual actor is "a willful participant in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co., supra,* 398 U.S. at 152, 90 S.Ct. at 1606 (quoting *United States v. Price, supra,* 383 U.S. at 794, 86 S.Ct. at 1157).

In *Adickes* a white teacher sued for the refusal of the defendant Kress to serve her lunch in its restaurant while she was in the company of six of her black students, and for her subsequent arrest by the Hattiesburg Police Department on a vagrancy charge. The plaintiff alleged that the defendant and the police had conspired to deprive her of her constitutional rights. The district court entered summary judgment for the defendant on the conspiracy count and this court affirmed. *Adickes v. S.H. Kress & Co.,* 252 F.Supp. 140 (S.D.N.Y.1966), *aff'd,* 409 F.2d 121 (2d Cir.1968). In reversing, the Supreme Court noted that the plaintiff would be entitled to relief "if she can prove that a Kress employee, in the course of employment and a Hattiesburg policeman somehow reached an understanding to deny Miss Adickes service" in the restaurant or to cause her subsequent arrest. *Adickes v. S.H. Kress & Co., supra,* 398 U.S. at 152, 90 S.Ct. at 1605. Involvement of a state official provided the requisite state action to show a direct violation of the plaintiff's constitutional rights. *See id.* As to the private party—Kress— the Court found that such a person *could be* liable under § 1983 even though not an official of the State when that person was jointly engaged as a willful participant in the prohibited action. In concluding that it was error to grant summary judgment for Kress on the conspiracy count, the Supreme Court stressed that the fact to be alleged *and proved* was that "the policeman and a Kress employee had a 'meeting of the minds' and thus *reached an understanding* that petitioner should be refused service." *Id.* at 158, 90 S.Ct. at 1609 (emphasis added).

In the present case the district judge initially relied on the *Adickes* "joint action" rationale in denying The Gan's motion to dismiss the plaintiffs' claims against it, stating that the Gan *would* be liable under § 1983 *if* it acted in concert with the municipal defendants. *Annunziato, supra,* 555 F.Supp. at 452 (emphasis added). Nonetheless, without making such a finding on the record and without plaintiffs adducing additional facts to support their claim, the district court subsequently held The Gan liable for fees under § 1988. This was error.

Section 1988, in relevant part, provides that:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C. 1681 et seq.], or title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], *the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.* 42 U.S.C. § 1988 (Supp. V 1981). (emphasis added).

Thus, for The Gan to be liable for fees under § 1988, it must first be subject to the court's jurisdiction under § 1983. *See*

*Moor v. County of Alameda,* 411 U.S. 693, 702, 93 S.Ct. 1785, 1792, 36 L.Ed.2d 596 (1973) (§ 1988 does not create an independent federal cause of action and is merely intended to complement the various acts which do create federal causes of action for the violation of federal civil rights). Due to the unusual procedural posture of this case and its rapid settlement by the parties, the district court never actually found The Gan liable as a "joint actor" under the *Adickes* rationale, as had been originally alleged in the complaint. Yet, when later presented with the plaintiffs' motion for legal fees, the district judge merely cited *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980), and concluded that a final finding of liability under § 1983 was not necessary for a fee award under § 1988. While this is an accurate general statement, it totally misses the mark here.

In *Maher* the defendant, the Connecticut Commissioner of Social Services, had entered into a settlement agreement, and the Supreme Court held that such defendant could be held liable for fees on the basis of the consent agreement. *Id.* at 129–30, 100 S.Ct. at 2574–75. There was no question in *Maher* that the defendant, a government official acting in his official capacity, was subject to liability under § 1983. In contrasting *Maher* to the instant case, it is plain that The Gan was not state actor nor was it a wrongdoer clothed with the authority of state law. Its sole "action" was to sign a contract with the City to purchase the Roger Sherman School. Not only did The Gan offer to pay the City a fair price for this property, but *the City,* for reasons of its own, *unilaterally* reduced the price.

■ There simply is no evidence in the record that The Gan was involved in a "conspiracy," "preconceived plan," "mutual understanding" or "concerted action" with the City to gain the more favorable price. *See, e.g., Adickes v. S.H. Kress & Co., supra,* 398 U.S. at 158, 90 S.Ct. at 1609; *Scott v. Greenville County,* 716 F.2d 1409, 1424 (4th Cir.1983) (conspiracy claim under § 1983 between private defendants and public officials was not shown either by

private defendants' attempts to influence action of County Council or by their intervention into the lawsuit); *Fonda v. Gray,* 707 F.2d 435, 439 (9th Cir.1983) (§ 1983 claim fails without "evidence of the existence of a 'meeting of the minds' between [private and government defendants] to knowingly attempt to accomplish an alleged wrongful purpose"); *Norton v. Liddel,* 620 F.2d 1375, 1379 (10th Cir.1980) (claim stated under § 1983 where private individual "actively conspires" with the intent purposely and knowingly to deprive an individual of his rights under the Constitution); *Alexanian v. New York State Urban Development Corp.,* 554 F.2d 15, 17 (2d Cir.1977) (*per curiam*) (§ 1983 "concerted action" claim stated where plaintiff alleged that private citizen struck him with his car and then had him arrested and threatened by police that unless he withdrew his charges against the driver, charges would be pressed against him for jumping on the hood of the car); *Smith v. Brookshire Brothers, Inc.,* 519 F.2d 93, 95 (5th Cir.1975) (*per curiam*) ("pre-conceived plan" between police and store managers to detain without cause stated a claim against store managers under § 1983), *cert. denied,* 424 U.S. 915, 96 S.Ct. 1115, 47 L.Ed.2d 320 (1976); *Fulton v. Emerson Electric Co.,* 420 F.2d 527, 529 (5th Cir. 1969) (*per curiam*) (§ 1983 claim stated where public officials, private citizens, and the company took "concerted action" to deprive plaintiffs of an opportunity to attempt to organize a union in the company's plant), *cert. denied,* 398 U.S. 903, 90 S.Ct. 1689, 26 L.Ed.2d 61 (1970); *Carr v. Bell,* 492 F.Supp. 832, 836 (N.D.Fla.1980) (finding liability under § 1983 where private defendant and deputy Sheriff "reached an agreement" to present occurrences incorrectly, and in such a manner that plaintiff was jailed and prosecuted for actions he never took); *O'Grady v. City of Montpelier,* 474 F.Supp. 186, 187 (D.Vt.1979) (§ 1983 action improperly brought against a private contractor who merely performed a construction contract in accordance with specifications provided by the city). Thus, since The Gan expressly denied liability in

the settlement agreement, and since no facts were adduced to prove that it acted in concert with a state actor and the district court made no such finding, it was error to hold The Gan liable as a state actor.

The plaintiffs would have us hold that The Gan must refuse the City's offer with its price reduction or suffer the consequences of becoming partners with the City. In our view, The Gan's acceptance of the City's proposal, including the price reduction, represented nothing more than a prudent business decision on its part. Since the City of New Haven had no formal bidding procedure, as the district court noted, the contract The Gan entered into with the City was not an illegal contract, *i.e.,* one in violation of city ordinances. The record is replete with evidence that over the years the City had effected similar transfers of properties for one dollar to other organizations in its attempt to curb urban decay by requiring that such organizations rehabilitate and make productive use of such properties. Additionally, still other properties purchased by the City in condemnation were later resold to various religious organizations at prices far below their acquisition prices.[2]

From the City's point of view the productive use of a given parcel of property in a manner aesthetically compatible with a particular neighborhood was a consideration that clearly outweighed the need to exact an appraised price from any particular purchaser. Thus, in reflecting upon the imminent closing of the Roger Sherman School, the City viewed The Gan as the instrument by which it would prevent that building from becoming another example of urban blight and a financial drain. From The Gan's point of view, it needed a new home for its school, and it purchased a building out of the City's surplus inventory upon the conditions set forth by the City. Concededly, the final price was more attractive than The Gan had anticipated, but there was no showing that this benefit arose from any "meeting of the minds," or as the result of "concerted action" or from any "preconceived plan" or "conspiracy" between the parties to effectuate such a reduced price.

■ Further, the Supreme Court has observed that § 1983 "should be read against the background of tort liability," *Monroe v. Pape, supra,* 365 U.S. at 187, 81 S.Ct. at 484, and that the statute does not create a cause of action for vicarious liability for constitutional torts, *Monell v. Department of Social Services,* 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978); *Duchesne v. Sugarman,* 566 F.2d 817, 830 (2d Cir.1977). Thus, The Gan may not be held liable vicariously for any constitutional deprivation caused by the City, merely because it innocently executed a contract to purchase city property. Such action, standing alone, does not constitute any breach of duty of constitutional magnitude so as to subject The Gan to liability under § 1983.[3] *See Griggs v. Allegheny County,* 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962) (local government operator of an airport held to have "taken," in the constitutional sense,

---

2. The record reveals substantial bargain purchases for each of nine church organizations ranging, for example, from one where the City's acquisition price was $153,000 and the resale price to the Church of the Rock of Faith was $19,100—a difference of $133,900—to a Methodist Church that paid $239.70 for which parcel the City had earlier paid $14,000. There were, in addition, eight $1 transactions from 1980–81. At the June 28 hearing, plaintiffs called Mr. Charles H. Allen, III, one of the two Aldermen voting against the sale to The Gan, to testify. Aside from the fact that portions of his testimony were of questionable reliability, it is anomalous that Mr. Allen, a vigorous opponent of the sale to The Gan, had himself been instrumental in convincing the Board of Aldermen to reduce the sales price of a City building to the Bethel African Church from $3200 to $500. The city's acquisition cost of such property was $26,200.

3. In reaching this conclusion, we are *not* holding that a private party may never be held liable under § 1983 for contracting with a state actor. We merely hold that on these facts, The Gan was not acting under "color of" state law so as to subject it to liability under § 1983. The recently decided case of *Pulliam v. Allen,* —— U.S. ——, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), holding that the doctrine of judicial immunity cannot be used as a shield to bar a fee award under § 1988, has no application to the instant case.

an easement from plaintiff landowner for which compensation had to be paid, but private airlines, who were lessees of the government operator and who were involved in the overflights giving rise to the taking, held *not* liable); *Yearsley v. W.A. Ross Construction Co.,* 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940) (private defendant acting pursuant to valid contract with government held not liable for alleged constitutional injury caused by its actions.) *Myers v. United States,* 323 F.2d 580 (9th Cir.1963) (private company acting under contract with government held not liable for inverse condemnation damages where company was merely performing pursuant to the contract's terms); *O'Grady v. City of Montpelier, supra,* 474 F.Supp. at 187 (private defendant contracting with city not liable under § 1983 for mere performance under municipal contract); *York Cove Corporation v. United States,* 317 F.Supp. 799, 810 (E.D.Va.1970) (to same effect). Hence, without a showing that The Gan was subject to liability under § 1983, the award of fees under § 1988 against The Gan was not warranted.

### B. *Special Circumstances*

Moreover, even were The Gan subject to liability as a state actor under § 1983, special circumstances present in this case indicate that the district court abused its discretion in awarding fees against The Gan pursuant to § 1988. The Civil Rights Attorney's Fees Awards Act, Pub.L. No. 94–559, 90 Stat. 2641, expressly provides that "the court, in its discretion, *may* allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988 (emphasis added). Thus, the awarding of fees is permitted in the exercise of discretion but is not mandated in all cases. Further, the legislative history reflects Congress' view that prevailing parties " 'should ordinarily recover an attorney's fee unless special circumstances would render an award unjust' ". S.Rep. No. 1011, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5912 (quoting *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964,

966, 19 L.Ed.2d 1263 (1968) (per curiam); *Kerr v. Quinn,* 692 F.2d 875, 877 (2d Cir. 1982). While the statutory language creates a presumption in favor of fee awards, *see Zarcone v. Perry,* 581 F.2d 1039, 1042 (2d Cir.1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979), this presumption is not irrebuttable and should not be applied automatically and rigidly. We agree with the district court that plaintiffs are the "prevailing parties" within the rubric of *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). There is also no doubt that this litigation was instituted to protect valuable constitutional rights, *see Riddell v. National Democratic Party,* 624 F.2d 539, 546 (5th Cir. 1980), and that the ability to recover fees is not affected by the fact of settlement. *Maher v. Gagne, supra.*

Yet, considering the path this litigation has taken, it is manifestly unjust to hold The Gan liable for fees. The Gan was blameless with respect to the action of the City of New Haven which was taken to serve its own purposes. The policy of awarding fees, which is to encourage civil rights plaintiffs to bring actions to vindicate their constitutional rights, was furthered in this case by the district court's award of fees against the City. We do not view this policy of encouragement as applicable to The Gan. It was an innocent third party caught in the cross-fire between plaintiffs and the City of New Haven over a municipal practice in which The Gan had no hand.

Further, awarding fees against The Gan because it vigorously defended itself is similarly inequitable. Plaintiffs named The Gan as a defendant in the lawsuit, and later compelled it to remain a party by rejecting its offer to pay the full $30,000. To reward such adamancy with fees against The Gan serves no policy of encouragement in the protection of constitutional rights, but only penalizes a guiltless party.

■ Since a party's liability under § 1983 depends upon its alleged unconstitutional activities *giving rise* to the litigation,

The Gan's *post facto* defense of this lawsuit also cannot form a proper basis for the district court's exercise of discretion subjecting The Gan to fee liability under § 1988. Obviously, a vigorous defense by a non-prevailing party who *is* already subject to § 1983 liability may give rise to an increased fee award. Nonetheless, absent proof that The Gan violated plaintiffs' constitutional rights or knowingly acted in concert with a state actor that did, The Gan, as a private party, cannot be held liable for attorneys fees under § 1988. This is so even though The Gan's participation in the litigation may have served to increase the amount of fees generated by plaintiffs' counsel.[4]

While the plaintiffs were successful in their efforts below, their objectives could have been achieved without the presence of The Gan in the litigation. We therefore reject the holding of the district court that The Gan's "unsuccessful strategic decision" to defend the suit actively made it subject to liability under § 1988, and conclude that it was an abuse of that court's discretion to award attorney's fees against The Gan. *See Huntley v. Community School Board of Brooklyn,* 579 F.2d 738, 742 (2d Cir.1978) (*per curiam* ) (fees denied where appellant had won what was at best, a "moral victory" of insufficient magnitude to warrant an award under § 1988); *Arkansas Community Organizations for Reform Now v. Arkansas State Board of Optometry,* 468 F.Supp. 1254, 1258 (E.D. Ark.1979) (codefendant in § 1983 action held not liable for attorney's fees under § 1988 where it participated in settlement negotiations and was a party to the consent order).

## V. *Conclusion*

Accordingly, the judgment of the district court insofar as it determined that The Gan

was liable for attorneys fees under 42 U.S.C. § 1988 is reversed.

OAKES, Circuit Judge (dissenting).

I dissent, because I would vote to affirm essentially on Judge Burns's opinion. As we said recently, "the latitude afforded trial courts in exercising ... discretion [in awarding fees] is narrowed by a presumption that successful civil rights litigants should recover an attorney's fee unless special circumstances would render such an award unjust." *Kerr v. Quinn,* 692 F.2d 875, 877 (2d Cir.1982).

I think it is clear that the appellees were the prevailing party in this case, notwithstanding the claims of appellants here. It is well-established that a plaintiff can be a prevailing party even if the case is settled. *McCann v. Coughlin,* 698 F.2d 112 (2d Cir.1983). Prevailing parties are those who succeed on "any significant issue," *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and I think Judge Burns correctly determined that the appellees succeeded in winning by settlement almost exactly what they hoped to accomplish by litigation. If indeed The Gan made an offer to pay the $30,000 two days after the lawsuit was filed, as it suggests it did, the lawsuit was nevertheless the catalyst for the offer. *Gagne v. Maher,* 594 F.2d 336 (2d Cir.1979), *aff'd,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980).

Concededly, the argument that it would be unjust to hold The Gan liable for fees in the peculiar circumstances of this case is more persuasive. It is true that The Gan agreed to pay $30,000 for the school, precisely the price that it initially offered the City for the building. It also appears that the reduction of the sale price to one dollar

---

**4.** We disagree with the dissent's argument that by not sitting back and assuming the role of a stakeholder, The Gan "effectively became a state actor by choice." In fact, The Gan had no *real* choice. At the time of the lawsuit, it had already vacated its former quarters, and were the plaintiffs to achieve their objective, The Gan would have found itself without any facility in which to educate its young charges. Therefore, what the dissent styles as a "choice" seems to be a wholly illusory one.

was the idea of several aldermen, and not of the school, although without an actual trial below we cannot know this for sure. From The Gan's point of view, it was caught in the position of defending the sale for nominal consideration by virtue of the appellees' suit and the unilateral action of the City, not by anything it did.

Although there is considerable appeal to this argument, which the majority makes into a no-state-action determination, on balance I would nonetheless affirm. Even if we accept The Gan's version of events, the school's decision to fight the lawsuit which challenged the one dollar purchase agreement resulted in the plaintiffs' expending time and money in pursuing their complaint; The Gan could have become a neutral stakeholder, but did not. Rather it chose to fight as hard as it could. Thus, it seems to me that The Gan effectively became a state actor by choice. As the trial court wrote:

> The Gan could have adopted the neutral role of a stakeholder in this litigation but by actively defending the suit it exposed itself to an award of attorneys' fees under 42 U.S.C. § 1988 in the event that plaintiffs prevailed. Since that event came to pass, defendant must bear the burden of its unsuccessful strategic decision.

Judge Burns's decision to impose one-third of the total attorneys' fees due the appellee on The Gan and the remaining two-thirds on the City seems to me to be eminently fair, and thus I would affirm.