**Anne GAYLOR, Plaintiff,**

v.

**Ronald REAGAN, President of the United States; 97th Congress of the U.S.A., Defendants.**

No. 82–C–985–D.

United States District Court,
W.D. Wisconsin.

Dec. 27, 1982.

Jody S. Melms, Madison, Wis., for plaintiff.

John R. Byrnes, U.S. Atty., Madison, Wis., for defendants.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is an action for declaratory and injunctive relief, challenging the constitutionality of a proposed presidential designation of 1983 as a national "Year of the Bible." Plaintiff has moved for a preliminary injunction ordering the President not to make such a designation, pending a final judicial determination of its constitutionality. This opinion and order are addressed to that motion.

Jurisdiction is claimed under 28 U.S.C. §§ 1331 and 1343. No basis for jurisdiction under § 1343 is suggested or suggests itself.

*The Complaint*

In determining whether plaintiff enjoys standing to bring and to maintain this action, it is appropriate to look to the allegations of the complaint, liberally construed in plaintiff's favor. *South East Lake View, etc. v. Dept. of Housing,* 685 F.2d 1027, 1034 (7th Cir.1982). The factual allegations of this complaint may be summarized as follows:

The Congress of the United States has approved Senate Joint Resolution 165, Public Law 97–280, 96 Stat. 1211. (A copy of P.L. 97–280 is attached to the complaint. A copy is also attached to this opinion and order as Appendix A and made a part hereof.) There is a substantial likelihood that in response to the authorization and request embodied in P.L. 97–280, the defendant President will proceed "to designate 1983 as a national 'Year of the Bible.'"

Plaintiff is a Wisconsin taxpayer, an adult resident of Madison, Dane County, Wisconsin, and president of the Freedom From Religion Foundation, Inc., a national organization headquartered in Madison. That organization is dedicated to the principle of separation of church and state. If the President declares 1983 as a national year of the bible, the declaration will directly and substantially harm the ability of Freedom From Religion Foundation, Inc., to carry out its function.[1]

Biblical teachings are unscientific.[2] Issuance of the presidential declaration will erode the ability of "our people"—presumably, the citizens or residents of the United States—to deal effectively with individual, local and national problems and will negatively affect the future of the United States. The teachings of the bible contain violent sexist and racist overtones which

---

1. No organization is a party to this action. That injury may befall a non-party is not a material fact.

2. In large part the complaint consists of a series of allegations that the plaintiff believes certain propositions (e.g., "plaintiff believes Biblical teachings are unscientific ....").

Construing the complaint liberally, I take it to allege that those propositions are true (e.g., biblical teachings are unscientific). But it appears that plaintiff also means to allege that she is a person who holds a certain set of beliefs.

potentially could encourage persons who rely on them to act in a manner harmful to plaintiff and others. If P.L. 97–280 is put into effect it will become a strong tool in the hands of theocrats and religious revivalists. The inherent power and prestige of the United States government makes it very likely its citizens will be influenced by such a presidential declaration.

Plaintiff is a non-theist. She believes that: biblical teachings are unscientific and represent a denial of the objective reality of nature; encouragement by the government to rely on these teachings will erode the ability of our people to deal effectively with individual, local and national problems and will negatively affect the future of our nation; the teachings of the bible contain violent sexist and racist overtones which potentially could encourage persons who rely on them to act in a manner harmful to herself and others. She personally finds repugnant these violent sexist and racial overtones.

Plaintiff believes that if the President is not enjoined from executing P.L. 97–280, plaintiff's first amendment right to be free from laws respecting the establishment of religion will be violated.[3]

### Comment on Factual Showing

Although it is to the complaint that I must look to determine standing, it is to evidence that I must look to determine whether plaintiff is entitled to a preliminary injunction. The complaint, unverified and signed only by plaintiff's attorney, as permitted by Rule 11, Fed.R.Civ.P., is not evidence. The material facts alleged in plaintiff's affidavit executed November 22, 1982 are evidence. Although I have not been expressly requested to take judicial notice of the content of P.L. 97–280 and its history, as they appear in exhibit A to the complaint and in appendix A to this opinion, see Rule 201, Fed.R.Evid., it is not unfair to the defendant President for me to consider that plaintiff has implied the re-

quest and I do take such notice. Similarly, although the burden of proof is upon the plaintiff, it seems not unfair to the defendant President to accept the representation by the United States Attorney that the President did in fact approve and sign P.L. 97–280. In the course of informal oral independent inquiry which I have made to confirm that the President did in fact approve and sign P.L. 97–280, I have been informed that the President made a public statement explaining his action. However, I have deliberately refrained from further inquiry on that point, and I have no knowledge of the content of any such statement. I proceed on the basis that there is no evidence of record in this case that the President has issued any public statement concerning P.L. 97–280 and no evidence of the content of any such statement, if one was made. Upon the basis of the entire record in this case and solely for the purpose of deciding plaintiff's motion for a preliminary injunction, I find as fact those matters set forth hereinafter under the heading "Facts."

### Facts

Senate Joint Resolution 165 passed the United States Senate March 31, 1982, passed the House of Representatives September 21, 1982, and was signed and approved by the President on October 4, 1982. It thus became Public Law 97–280 and appears at 96 Stat. 1211. It is probable that the President will issue a proclamation in some form designating 1983 as a national "Year of the Bible."

Plaintiff is an adult resident of the City of Madison, Dane County, Wisconsin. She is the founder and president of Freedom From Religion Foundation, an incorporated 1100-member national organization headquartered in Madison, Wisconsin. She has spent a large part of her adult life endeavoring to keep state and church separate in this country. As a non-theist, she believes that biblical teachings are unscientific and

---

**3.** This latter statement of belief on plaintiff's part is repeated in various forms within the complaint. Whether a plaintiff believes that

the constitution has a certain meaning is not a material fact.

represent a denial of objective reality of nature and that reliance upon them erodes the ability to deal effectively with problems. She believes that the teachings of the bible contain violent sexist and racist overtones and potentially could provide justification for people to act in a similar manner.

## Opinion

### 1. Standing

In her complaint, plaintiff presents herself principally as an advocate of the separation of church and state, as a constitutional theorist, so to speak. In this role, she is indistinguishable from a person who believes that the states should not unduly burden interstate commerce or a person who believes that the right of the people to keep and bear arms should not be infringed. Perhaps more to the point, in this role she is indistinguishable from a person who believes, in the language of P.L. 97–280, that "renewing our knowledge of and faith in God through Holy Scripture can strengthen us as a nation and people," but who also advocates the separation of church and state and who would have opposed Senate Joint Resolution 165 and who would presently oppose a designation of 1983 as "the Year of the Bible." In this role, she appears to be merely a person interested in a problem, a concerned bystander, however intense may be her interest and concern. *United States v. SCRAP,* 412 U.S. 669, 687, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973); *Sierra Club v. Morton,* 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972). In such a role, she lacks standing.

In her complaint, plaintiff appears also to allege that the biblical teachings are in fact unscientific and represent a denial of the objective reality of nature; that in fact reliance on those teachings erodes the ability of people to deal effectively with problems; and that in fact biblical teachings contain violent sexist and racist overtones which can encourage persons who rely on them to act in a manner harmful to plaintiff and others. It is as if plaintiff seeks

findings by the court that these propositions are true. But such propositions, whether true or false, are not material to this lawsuit based on the establishment clause of the first amendment. Whether an established religion is bad, unscientific, violent, sexist, or racist is immaterial. None of these allegations is relevant to plaintiff's standing to bring this action (or to any other issue in the lawsuit).

However, with the benefit of the liberal construction which I am bound to accord the complaint, it may be read to present the plaintiff as a person who does not share a system of thought founded on the belief in one or more gods,[4] and thus as a person who is not an adherent of a "religion," within the meaning of the establishment clause of the first amendment, the teachings of which are to be found in "the Bible," as that term is used in P.L. 97–280. The question is whether these allegations, and only these allegations of the complaint, afford plaintiff standing to challenge the implementation of P.L. 97–280 by a presidential designation of 1983 as "the Year of the Bible."

It is familiar law that the first branch of the standing doctrine is jurisdictional and stems from Article III of the Constitution. That is, the plaintiff must allege "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1963). As corollaries to this constitutional test of standing, there are requirements that the personal stake, or threatened bona fide injury, be fairly traceable to the challenged conduct and that the exercise of the court's remedial powers would redress the injury asserted. *See* Chayes, Foreword: Public Law Litigation and the Burger Court, 96 Harv.L.Rev. 4, 22–26 (1982).

---

**4.** See definition of "theism" in Webster's Third New International Dictionary (1971).

So-called prudential limitations have been added by the Supreme Court. One is that the injury must be peculiar to the plaintiff or the group she represents, rather than one shared generally with the citizenry at large. Another is that the plaintiff must ordinarily assert her own legal interest rather than those of other persons. Another is that the plaintiff's interest must be arguably within the zone of protection of the relevant constitutional provision. *Id. See South East Lake View, etc., supra,* 685 F.2d at 1034–1036.

■ Assuming for a moment that the personal stake or threatened bona fide injury is made out in the allegations of this plaintiff's complaint, it is clear that such injury is traceable to the challenged conduct (namely the enactment of P.L. 97–280 and a presidential designation of 1983, in tandem) and that an injunction against the presidential designation would avert at least some substantial portion of the threatened injury. It is also clear that plaintiff is asserting her own interest as a "non-theist," although she necessarily asserts as well the interests of many others who do not adhere to that form of theism, the teachings of which appear in the bible. Also, the interest she asserts falls squarely within the protection of the establishment clause.

The two serious questions relating to plaintiff's standing are: (1) whether she has made out a bona fide threatened injury; and (2) whether that injury is peculiar to her or the group she represents, rather than one shared generally with the citizenry at large.

The suggestion is that this is a tempest in a teapot because P.L. 97–280 and a presidential designation of 1983, in tandem, can be expected to have so little actual impact upon anyone. A decent respect for the legislative and executive branches bars acquiescence in this suggestion. The Senate and the House obviously regarded Senate Joint Resolution 165 as a matter of great moment. By his approval and signature, the President has demonstrated that he shares this view. I may not assume that they consciously engaged in an idle pursuit,

nor would it be seemly for me to find that they have erred in their assessment that the designation of 1983 as "the Year of the Bible" will have a real impact upon the lives of the people of the United States. It follows that the impact will be experienced not only by those who already adhere to the teachings of the bible and those who may be persuaded in 1983 and thereafter to do so, but also by those like the plaintiff who do not adhere and are unlikely to be persuaded. But the impact will vary as between those two broad groups.

The boldness and aggressiveness of P.L. 97–280 cannot be ignored. It pronounces the bible to be "the Word of God" and it calls for the presidential designation of 1983 in recognition of our national need "to apply the teachings of the Holy Scriptures." P.L. 97–280 represents a Congressional pronouncement—and, if the President makes his designation in the terms of P.L. 97–280, a pronouncement by the government of the United States—that truth and virtue lie within the bible and that falseness and evil lie without it. The implication is so powerful as hardly to be described as implication, that those who fail or refuse to accept and to apply biblical teachings abide in falseness and evil. To be subjected to such reproach by one's government is to suffer bona fide injury.

• There may be a suggestion, too, that this kind of injury pales in contrast to injury to one's body or pocketbook. It is true that much of the Constitution is directed to the physical order, to tangible things and activity, such as commerce and currency and property. But the very opening words of the Bill of Rights are: "Congress shall make no law respecting an establishment of religion . . . ." In the constitutional hierarchy, primacy is given to the life of the mind and spirit, to religion and to the absence of religion, to the values we shape for ourselves between birth and death. To assign minor significance to injury to those values wrought by governmental censure is to misapprehend the Constitution.

I hold that the threatened injury to plaintiff described in the complaint is bona fide, for the purpose of the standing doctrine.

With respect to the remaining prudential test, it is true that the threatened visitation of opprobrium upon the plaintiff by her government is not peculiar to her. It is a threat directed to a considerable segment of our population. However, it is definitely not shared by the citizenry at large. Although statistics immediately available to me are not readily translatable in terms of adherence to the bible [5] as "the word of God," the members of Roman Catholic and Protestant churches in 1979 constituted about 55% of the estimated total population of the United States.[6] It can be assumed safely that a large portion of that 55% are persons who do accept the bible as "the word of God" and who are not threatened with governmental censure for non-adherence to that belief.

I conclude that because the threat of injury here cannot fairly be considered as shared by the whole people of the United States, the plaintiff meets this portion of the standing test.

I conclude, more generally, that the allegations of the complaint, liberally construed, are sufficient to confer standing upon the plaintiff.

### 2. *Merits of motion for preliminary injunction*

■ The injury with which plaintiff is threatened is serious. It would be irreparable. Once the President had designated 1983 as "the Year of the Bible," incorporating the terms of P.L. 97–280, later efforts by him to repair the damage could hardly be totally successful. Remedies at law, such as money damages, would be unavailable. *Nixon v. Fitzgerald*, —— U.S. ——, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982). On the other hand, unless I were to find as a fact, judicially, that the bible is indeed "the Word of God," a finding from which I consider myself constitutionally prohibited, one or two years of delay in the designation of a "Year of the Bible" appear not unduly injurious to the defendant President, the Congress, and those who desire such a designation. Also, if the circumstances of this case ever permit a judgment on the merits, it

appears that plaintiff enjoys a reasonably good chance to succeed in her contention that P.L. 97–280 and any presidential designation expressed in the terms of P.L. 97–280, violate the establishment clause of the first amendment.

Nevertheless, it is doubtful whether it is within the power of the national judiciary to intervene in advance of any act contemplated by the President and to exercise its injunctive power to forbid it. *State of Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501, 18 L.Ed. 437 (1886). Even assuming the judiciary enjoys the power anticipatorily to enjoin the President, who, with the Vice-President, is the only officer of the United States elected by the whole people, this is not the occasion for its exercise.

I have made plain my view that the issue here is grave. But what is missing is a virtual certainty that unless enjoined, the President will actually choose to designate 1983 as "the Year of the Bible" and, more to the point, that if he does so, he will express the designation in an unconstitutional manner.

As chief executive it is surely within the power of the President to exhort the entire nation to mark 1983 as a year of reflection and contemplation. It is surely within his power to exhort the people of the United States in 1983 to draw upon those wonderfully rich and various wellsprings of tradition—ethnic, regional, religious, and non-religious—from which they draw their strength and resolve. It is surely within his power to identify and to proclaim his own tradition and to express his respect for those differing but equally proud traditions. To accomplish such constitutional exhortation in the context of a "Year of the Bible" would be a remarkable feat. But doubt that he can perform it does not justify the exercise of the injunctive power of this court against the President, if such power exists.

### Order

It is ordered that plaintiff's motion for a preliminary injunction is denied.

---

**5.** I assume throughout that the "bible" referred to in P.L. 97–280 includes the new testament.

**6.** Statistical Abstract of the United States, U.S. Department of Commerce, Bureau of Census (102d ed. 1981), p. 53.

## APPENDIX A

Public Law 97–280
97th Congress

### Joint Resolution

Authorizing and requesting the President to proclaim 1983 as the "Year of the Bible".

Oct. 4, 1982
[S.J. Res. 165]

Whereas the Bible, the Word of God, has made a unique contribution in shaping the United States as a distinctive and blessed nation and people;

Whereas deeply held religious convictions springing from the Holy Scriptures led to the early settlement of our Nation;

Whereas Biblical teachings inspired concepts of civil government that are contained in our Declaration of Independence and the Constitution of the United States;

Whereas many of our great national leaders—among them Presidents Washington, Jackson, Lincoln, and Wilson—paid tribute to the surpassing influence of the Bible in our country's development, as in the words of President Jackson that the Bible is "the rock on which our Republic rests";

Whereas the history of our Nation clearly illustrates the value of voluntarily applying the teachings of the Scriptures in the lives of individuals, families, and societies;

Whereas this Nation now faces great challenges that will test this Nation as it has never been tested before; and

Whereas that renewing our knowledge of and faith in God through Holy Scripture can strengthen us as a nation and a people: Now, therefore, be it

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That the President is authorized and requested to designate 1983 as a national "Year of the Bible" in recognition of both the formative influence the Bible has been for our Nation, and our national need to study and apply the teachings of the Holy Scriptures.

Year of the Bible.

Approved October 4, 1982.