**FREEDOM FROM RELIGION FOUNDA-TION, INC., a Wisconsin Nonstock Corporation, Phyllis Grams, Annie Laurie Gaylor, and Anne Nicol Gaylor, Plaintiffs,**

v.

**Patrick ZIELKE, individually and as Mayor of the City of LaCrosse, Wisconsin, Common Council of LaCrosse, Wisconsin, and City of LaCrosse, Wisconsin, Defendants.**

No. 85–C–850–C.

United States District Court,
W.D. Wisconsin.

June 22, 1987.

Richard B. Jacobson, Madison, Wis., for plaintiffs.

G. Jeffrey George, Steele, Klos & Flynn, LaCrosse, Wis., for defendants.

## OPINION and ORDER

CRABB, District Judge.

This is a civil action for injunctive relief brought under 42 U.S.C. § 1983. Plaintiffs contend that the display in a city park of a marker setting out the text of the Ten Commandments violates their rights to be free of public support of religion and religious societies and to be free of governmental preference for religious establishments, and that it interferes with their rights of conscience.

Trial to the court was had on March 10 and 11, 1987. From the evidence adduced and from the allegations of the complaint that are admitted by defendants, I make the following findings of fact.

## FACTS

Plaintiff Freedom From Religion Foundation, Inc. is a Wisconsin nonprofit corporation based in Madison, Wisconsin, with a nationwide membership. Its purpose is the promotion of separation of church and state.

Plaintiff Phyllis Grams has been a resident of LaCrosse, Wisconsin continuously since 1938. Plaintiff Annie Laurie Gaylor is a resident of Madison, Wisconsin and editor of a publication entitled *Free Thought Today*, which is published by the Freedom From Religion Foundation. Plaintiff Anne Nicol Gaylor is a resident of Madison, Wisconsin and president of the Freedom From Religion Foundation, Inc.

Defendant Patrick Zielke is mayor of the city of LaCrosse, Wisconsin and shares with defendant Common Council the corporate authority of the city of LaCrosse. He is the chief executive of the city and is responsible for the observance and enforcement of state and federal law.

Defendant Common Council of the City of LaCrosse is the governing body of the city. Defendant City of LaCrosse, Wisconsin is a body corporation existing under Wisconsin law.

Defendant City owns and maintains Cameron Park, a public park located within the corporate boundaries of the city. Within that park, defendants have displayed and continue to display a tombstone-like monument on which appear tablets that traditionally symbolize one of the versions of the Bible's Ten Commandments. Written on the tablets is an English translation of one of the versions of the Ten Commandments.

The land comprising Cameron Park was purchased by defendant City in 1899. The park occupies approximately one acre of land near the downtown area of the city, directly across the street from the building housing the Fraternal Order of the Eagles. The park contains no man-made structures other than the monument and some benches. It has no playground equipment or picnic tables.

In September 1964, representatives of the Eagles approached the City of La-Crosse Park Commission with a proposal to donate a monolith bearing the Ten Commandments, to be located in Cameron Park and to be lighted at night from the roof of the Eagles' building across the street.

At the time, the Eagles had a national policy of donating Ten Commandment monoliths to cities and towns throughout the country, as a national project of preserving the moral and religious heritage of the United States.

The park commission voted in October 1964 to accept the gift of the monolith. The monument was dedicated in a ceremony held June 19, 1965. During the ceremony, at least one speaker took advantage of the occasion to comment upon the flood-fighting efforts of the students from the city's high schools and colleges during recent floods that had imperiled the city.

The monument is approximately five feet, four inches high, thirty-three inches wide, and ten inches deep. It stands about eight feet from the sidewalk surrounding Cameron Park and is plainly visible to anyone standing on the sidewalk. The inscription on the monument reads as follows:

the Ten Commandments

I AM the LORD thy God

Thou shalt have no other gods before me

Thou shalt not make for thyself any graven images

Thou shalt not take the Name of the Lord thy God in vain

Remember the Sabbath day to keep it holy

Honor thy father and thy mother that thy days may be long upon the land which the Lord thy God giveth thee

Thou shalt not kill

Thou shalt not commit adultery

Thou shalt not steal

Thou shalt not bear false witness against thy neighbor

Thou shalt not covet thy neighbor's house

Thou shalt not covet thy neighbor's wife nor his manservant, nor his maidservant, nor his cattle, nor anything that is thy neighbor's.

At the bottom of the monolith is a smaller scroll, reading

PRESENTED TO THE CITY OF LACROSSE BY LACROSSE AERIE AND AUXILIARY NO. 1254 OF THE FRATERNAL ORDER OF EAGLES

JUNE 1965

The monolith contains symbols representative of the Jewish and Christian religions.

Defendant City has never expended any funds on the preservation or maintenance of the monument since its erection in 1965. The Eagles paid for the monument and for the slab on which it rests.

Plaintiff Phyllis Grams first became aware of the monolith's existence in 1985, when a friend called her attention to it. The Ten Commandments do not accord with her own religious beliefs. She views the existence of the monolith under city auspices as a mandate from the city to her as a private citizen, telling her what religious beliefs she should hold; she resents and is offended by that mandate. Plaintiff Grams has not modified her conduct in any way since she became aware of the statue's existence.

Plaintiff Grams complained to defendant Common Council about the monolith's presence in a city park. After she had done so she received threatening and obscene telephone calls.

Plaintiff Anne Gaylor is deeply affronted by the existence of the monolith. As president of the Freedom From Religion Foundation, Inc., she wrote to defendant Common Council on May 27, 1985, asking for a response from the defendant about what she viewed as a violation of separation of church and state. She suggested the statue be removed. She never received a response to her letter.

Until plaintiffs Grams and Anne Gaylor complained to defendants about the monolith, no one had ever complained about its existence.

When the members of defendant Common Council received plaintiff Anne Gaylor's letter, they scheduled a hearing before the Judiciary and Administrative Committee of the council. After hearing from the public, the committee voted to file the letter. The committee's decision went forward to the defendant Common Council, which held another public hearing and accepted the recommendation of the Judiciary and Administrative Committee.

The Ten Commandments have significance in the Jewish, Christian, and Islamic religions. They have no significance in the Hindu and Buddhist religions. Jews view the Ten Commandments as a religious symbol. Most Jews find offensive the public display of religious symbols. Many Jews would not write the word "God" in anything other than a sacred text.

The monolith has characteristic religious content. It has a definite source in the Old Testament.

A number of LaCrosse residents have signed a petition supporting the retention of the monolith in Cameron Park.

OPINION

The threshold question in this case is whether plaintiffs have standing to challenge the continued presence of the Ten

Commandments monolith in Cameron Park. Plaintiffs assert that the individual plaintiffs have standing to sue because each of them has suffered injury from the display of the monolith, that the Foundation has organizational standing to sue on behalf of its members, and that plaintiff Grams has standing to sue as a municipal taxpayer. Defendants contend that none of the individual plaintiffs has established a distinct and palpable injury that would entitle them or the Foundation to standing, and that plaintiff Grams does not have standing to sue as a taxpayer.

The question of standing involves both constitutional limitations and prudential concerns. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). The constitutional aspect of standing centers on whether the plaintiff has made out a "case or controversy" within the meaning of Article III of the Constitution, and the issue of "case or controversy" in turn revolves on the presence of injury to the plaintiff. *Id.* at 498–99, 95 S.Ct. at 2205.

> [A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision."

*Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citations omitted). The injury suffered by the plaintiff must be distinct and palpable; that is, there must be "injury in fact." *Warth v. Seldin,* 422 U.S. at 501, 95 S.Ct. at 2206; *Valley Forge,* 454 U.S. at 473, 475, 102 S.Ct. at 759, 760. It is not enough for a plaintiff to assert a "generalized grievance" shared by all or most citizens, nor may a plaintiff obtain standing by asserting the rights of third parties. *Warth v. Seldin,* 422 U.S. at 499, 95 S.Ct. at 2205. However, there is no requirement that the injury be economic. Standing may be predicated on non-economic injury. *Valley Forge,* 454 U.S. at 486, 102 S.Ct. at 766; *United States v. SCRAP,* 412 U.S. 669, 686, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254 (1973).

### 1. Plaintiff Annie Laurie Gaylor

■ There was no allegation in the complaint, and no evidence adduced at trial, of any injury suffered by plaintiff Annie Laurie Gaylor. Without some showing that she has been or will in fact be perceptibly harmed by the actions of defendants, *SCRAP,* 412 U.S. at 688, 93 S.Ct. at 2416, Annie Laurie Gaylor does not have standing to sue. Accordingly, since Annie Laurie Gaylor has shown no injury of any kind, I find that she is without standing to bring this lawsuit.

### 2. Plaintiff Anne Gaylor

Plaintiff Anne Gaylor testified that she suffered injury from the presence of the Ten Commandments monolith because she was deeply affronted by its existence and because she views it as violating the principle of separation of church and state. Aside from the affront to her beliefs, plaintiff Anne Gaylor asserts no other injury.

A decade or two ago, it appeared that a plaintiff "may have a spiritual stake in First Amendment values sufficient to give standing to raise issues concerning the Establishment Clause and the Free Exercise Clause." *Data Processing Service v. Camp,* 397 U.S. 150, 154, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970), citing *Abington School District v. Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963). *See also Anderson v. Salt Lake City Corporation,* 475 F.2d 29, 31 (10th Cir.1973) ("the plaintiffs have standing based on their beliefs about religion to question whether those beliefs have been infringed upon by an alleged use of public property for religious purposes.").

In *Valley Forge,* however, the Supreme Court noted that unless a plaintiff is directly affected by the allegedly unconstitutional conduct, a spiritual stake without more is insufficient to confer standing. 454 U.S. at 486–87 n. 22, 102 S.Ct. at 766 n. 22. The

Court explained the basis for standing in an Establishment Clause case:

> Although respondents claim that the Constitution has been violated, they claim nothing else. They fail to identify any personal injury suffered by them *as a consequence* of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees. That is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms. It is evident that respondents are firmly committed to the constitutional principle of separation of church and State, but standing is not measured by the intensity of the litigant's interest or the fervor of his advocacy. ...
>
> [W]e do not retreat from our earlier holdings that standing may be predicated on noneconomic injury. We simply cannot see that respondents have alleged an *injury* of *any* kind, economic or otherwise, sufficient to confer standing.

*Id.* at 485–86, 102 S.Ct. at 765–66 (citations and footnote omitted; emphasis in original). The Court held that the respondents in *Valley Forge*, residents of Maryland and Virginia who complained of a transfer of government property in Pennsylvania, had no standing to sue. *Id.* at 487, 102 S.Ct. at 766.

The Court of Appeals for the Seventh Circuit recently interpreted the requirements for standing articulated in *Valley Forge:*

> The fact that the plaintiffs do not like a cross to be displayed on public property—even that they are deeply offended by such a display—does not confer standing, for it is not by itself a fact that distinguishes them from anyone else in the United States who disapproves of such displays. To be made indignant by knowing that government is doing something of which one violently disapproves is not the kind of injury that can support a federal suit.

*American Civil Liberties Union v. City of St. Charles,* 794 F.2d 265, 268 (7th Cir. 1986) (citations omitted). The court of appeals determined that, at least where the plaintiff is not complaining of an establishment of religion where he or she lives, some alteration in the plaintiff's behavior is a predicate to standing. Even where the cost to the plaintiff is slight, the plaintiff's willingness "to incur a tangible if small cost serves to validate, at least to some extent, the existence of genuine distress and indignation, and to distinguish the plaintiffs from other objectors to the alleged establishment of religion by [the city]." *Id.* The fact that plaintiffs detoured around the streets they ordinarily used rather than be exposed to a cross erected by city, was a sufficient cost to confer standing. *Id.*

District courts within this circuit have taken a similar approach. In *Van Zandt v. Thompson,* 649 F.Supp. 583 (N.D.Ill.1986), the court stated that:

> [A]n individual may not maintain standing merely because he or she is offended, no matter how strongly, by the actions of the state. Nonetheless, if a plaintiff alters his or her conduct in any manner as a direct consequence of the government's alleged Establishment Clause violation, a sort of behavioral manifestation of the deep offense which will otherwise not suffice for standing, he or she has proper standing to sue.

*Id.* at 587 (citations omitted). Similarly, in *Gaylor v. Reagan,* 553 F.Supp. 356, 359 (W.D.Wis.1982) (Doyle, J.), the court held that the plaintiff lacked standing as "merely a person interested in a problem, a concerned bystander, however intense may be her interest and concern." However, the court found that the plaintiff in that action did have standing, as a person who was not an adherent of a religion, to challenge implementation of a federal act that would have designated 1983 as "the Year of the Bible." *Id.* at 359–60. The court stated that the clear implication of the language of the act that those who did not accept the Bible were false and evil, constituted a bona fide threatened injury to the plaintiff. *Id.* at 360.

Other courts of appeals have adopted similar limits on standing. *See, e.g., Saladin v. City of Milledgeville,* 812 F.2d 687, 692 (11th Cir.1987) (plaintiffs had standing because they "come into direct contact with the offensive conduct"); *Hawley v. City of Cleveland,* 773 F.2d 736, 739–40 (6th Cir. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986) (plaintiffs had standing to challenge lease of space in municipal airport to chapel because they "regularly" used the airport and the presence of the chapel would impair that use); *American Civil Liberties Union of Georgia v. Rabun County Chamber of Commerce,* 698 F.2d 1098, 1103–09 (11th Cir. 1983) (plaintiffs had standing to challenge a cross maintained in a state park because they were residents of the state, made use of public parks, and demonstrated an unwillingness to use the park in question because of the presence of the cross).

There appears to be general agreement among the courts "for the proposition that a plaintiff challenging sectarian use of public property for impairing his actual use and enjoyment of that property has standing to challenge the impermissible activity." *Hawley,* 773 F.2d at 740 (plaintiffs were regular users of municipal airport whose use would be impaired by lease of space to chapel). *See also City of St. Charles,* 794 F.2d at 268 ("at some inconvenience to themselves," plaintiffs detoured around their usual route to avoid seeing cross erected by city). Moreover, in at least one instance standing has been found because of the plaintiffs' averments that they would not use a public park so long as a cross remained there, even though only one plaintiff had actually seen the cross and none of the plaintiffs had used the park in question. *Rabun County,* 698 F.2d at 1107–08. The court noted that it "would be anomalous to require" the plaintiffs "to compromise their principles by subjecting themselves to the religious symbolism of the cross" in order to gain standing to challenge the presence of the cross. *Id.* at 1108 n. 18. By contrast, where no showing of an impairment of use and enjoyment has been made, the plaintiff's indignation and outrage, no matter how sincere or deeply felt, are not sufficient to confer standing. *Valley Forge,* 454 U.S. at 486, 102 S.Ct. at 766; *Van Zandt,* 649 F.Supp. at 587; *Gaylor,* 553 F.Supp. at 359.

In the present action, plaintiff Anne Gaylor testified that she is deeply affronted by the Ten Commandments monolith in Cameron Park. However, she did not assert that her actual use and enjoyment of the park were impaired, or even that her future use of the park would be curtailed because of the presence of the statue. In the absence of any showing that plaintiff Anne Gaylor suffered any injury cognizable under Article III, I find that plaintiff Anne Gaylor is without standing to bring this lawsuit.

### Plaintiff Phyllis Grams

Plaintiffs claim that Grams has standing on two grounds. The first ground is the same as that asserted for the other plaintiffs: citizen standing to challenge allegedly unconstitutional actions by government. The other ground on which plaintiffs base Grams' standing is her status as a municipal taxpayer.

#### a. Citizen standing

Plaintiff Grams testified at trial that she first became aware of the monolith in 1985, twenty years after its dedication, when a friend called her attention to it. She resents what she perceives as a mandate from the city as to what religious beliefs she should hold, and she is offended by the presence of the statue. In response to an explicit question on cross-examination, Grams testified that she has not modified her conduct in any way since she became aware of the monolith's existence.

If the question of plaintiff Grams' standing is treated exactly like the question of plaintiff Anne Gaylor's, then clearly Grams has no standing to sue. She has neither alleged nor asserted any injury distinct from the injury claimed by Anne Gaylor: that is, she has shown that she is offended by the monolith, but not that her use and enjoyment of Cameron Park or its environs

either has been, is, or will be impaired by the presence of the monolith.

However, there is some indication in the case law that a lesser injury may suffice for a local plaintiff than is required for a plaintiff more remote from the site of the alleged governmental establishment of religion. The seed of this differentiation was the Court's opinion in *Valley Forge*, 454 U.S. 464, 102 S.Ct. 752. In reaching its decision in that case that the respondents lacked standing, the Court laid some stress on the fact of their geographical distance from the allegedly unconstitutional activity.

> Respondents complain of a transfer of property located in Chester County, Pa. The named plaintiffs reside in Maryland and Virginia; their organizational headquarters are located in Washington, D.C. They learned of the transfer through a news release. Their claim that the Government has violated the Establishment Clause does not provide a special license to roam the country in search of governmental wrongdoing and to reveal their discoveries in federal court.

454 U.S. at 486–87, 102 S.Ct. at 766 (footnotes omitted).

The Court of Appeals for the Seventh Circuit has indicated without deciding that the issue of proximity may be important. "Maybe it ought to make a difference if (as here) a plaintiff is complaining about the unlawful establishment of a religion by the city, town, or state in which he lives, rather than about such an establishment elsewhere; he might be intensely distressed to find himself living in a jurisdiction that had an established church." *City of St. Charles*, 794 F.2d at 268. However, the court of appeals found it unnecessary "to get into degrees of distress" since the plaintiffs in that case had altered their behavior in response to the complained of conduct. *Id.* Similarly, the same court noted that "living in a neighborhood may be sufficient to confer standing upon a party challenging proposed changes in that neighborhood." *Foster v. Center Township of LaPorte County*, 798 F.2d 237, 243 (7th Cir.1986), citing *Alschuler v. Depart-*

*ment of HUD*, 686 F.2d 472, 476–77 (7th Cir.1982). Other courts have intimated also that geographical distance may be an important factor in some cases. *See, e.g., Rabun County*, 698 F.2d at 1107 n. 17 ("While close proximity may be of controlling significance in some cases, such a requirement in this case would be inconsistent with the function of a state park").

In the present case, plaintiff Grams is a resident of the city in which the monolith is located. However, there is no allegation of any closer proximity than that. There is no showing, for example, that Grams lives in the same neighborhood as the park in which the statue is located, or that Grams' usual driving or walking routes go past the park, or that the monolith is visible to her in the course of her usual routine. This does not appear to be a case in which physical proximity is controlling or even particularly significant. As the Court has held in a case challenging a transfer of property in Pennsylvania:

> Respondent Americans United claims that it has certain unidentified members who reside in Pennsylvania. It does not explain, however, how this fact establishes a cognizable injury where none existed before. Respondent is still obligated to allege facts sufficient to establish that one or more of its members has suffered, or is threatened with, an injury other than their belief that the transfer violated the Constitution.

*Valley Forge*, 454 U.S. at 487 n. 23, 102 S.Ct. at 766 n. 23. In this action, despite plaintiff Grams' proximity to the park, plaintiffs have not alleged that she has suffered any injury other than her belief that the continued presence of the monolith violates the First Amendment's prohibition against governmental establishment of religion.

■ Courts have recognized that standing may be difficult to establish, particularly in a First Amendment context. *Id.* at 498, 102 S.Ct. at 772; *City of St. Charles*, 794 F.2d at 268. Nonetheless, the requirement of some "injury in fact" remains. The Supreme Court has noted, however, that " 'an identifiable trifle is enough for

standing to fight out a question of principle.'" *United States v. SCRAP*, 412 U.S. at 689 n. 14, 93 S.Ct. at 2417 n. 14, quoting Davis, *Standing, Taxpayers and Others*, 35 U.Chi.L.Rev. 601, 613 (1968). In the present case, plaintiff Grams has not established even "an identifiable trifle" of injury beyond the fact that she is offended by the presence of the Ten Commandments monolith in a public park of the city in which she resides. I conclude that plaintiff Grams has not shown that she suffers an injury that would entitle her to maintain standing.

### 2. *Taxpayer standing*

Plaintiffs assert also that plaintiff Grams has standing to sue as a municipal taxpayer. While the standing of federal taxpayers has been restricted severely, *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), municipal taxpayers continue to enjoy standing to challenge municipal expenditures.

> [R]esident taxpayers may sue to enjoin an illegal use of the moneys of a municipal corporation. The interest of a taxpayer of a municipality in the application of its moneys is direct and immediate and the remedy by injunction to prevent their misuse is not inappropriate.

*Frothingham v. Mellon*, 262 U.S. 447, 486, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923) (citations omitted). The Court's recognition of the standing of municipal taxpayers has been affirmed by several lower courts. *See, e.g., Schreiber v. Lugar*, 518 F.2d 1099, 1101 n. 2 (7th Cir.1975) ("Plaintiffs' standing as municipal taxpayers appears to be established by *Frothingham*"); *Gwinn Area Community Schools v. State of Michigan*, 741 F.2d 840, 844 (6th Cir.1984) (recognizing the difference between federal taxpayer standing and municipal taxpayer standing in that municipal taxpayers suffer "direct and tangible injuries"); *Ridgefield Women's Political Caucus, Inc. v. Fossi*, 458 F.Supp. 117, 120 n. 3 (D.Conn.1978) ("Taxpayer standing to challenge municipal spending has long been recognized by the Supreme Court"). More recently, courts have addressed the specific question whether the Supreme Court intended to restrict municipal taxpayer standing by its holding

that the plaintiffs in *Valley Forge* did not have taxpayer standing. Lower courts have noted that the challenge in *Valley Forge* was to a federal, not municipal, governmental action. Accordingly, the courts have refused to find that *Valley Forge* had any effect on established municipal taxpayer standing. *Hawley v. City of Cleveland*, 773 F.2d 736, 741–42 (6th Cir.1985), *cert. denied*, ─ U.S. ─, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986); *Annunziato v. New Haven Board of Aldermen*, 555 F.Supp. 427, 430–31 (D.Conn.1982).

▮ In the present case, however, there are two major stumbling blocks to finding that plaintiff Grams has standing as a municipal taxpayer to challenge the presence of the Ten Commandments monolith in Cameron Park. First, there was no allegation in the complaint, and no evidence adduced at trial, that plaintiff Grams is a LaCrosse municipal taxpayer. Defendants appear to assume that she is, since they refer to her in their briefs as a taxpayer, but the evidence does not establish this fact. Even if it were shown that Grams is a taxpayer, however, there is no evidence that any tax money is spent to maintain the monolith. Although the city owns the park in which the monolith is located, the evidence adduced at trial established that the city has never expended any funds for the preservation or maintenance of the statue since its erection in 1965. I cannot find that plaintiff Grams has standing to sue as a municipal taxpayer if no tax money has ever been expended on the challenged activity. *See City of St. Charles*, 794 F.2d at 267 (plaintiffs' status as taxpayers is irrelevant if no tax revenues have been used for the challenged activity).

Accordingly, I find that plaintiff Grams does not have standing to sue as a citizen because she has failed to establish any injury other than her belief that the presence of the monolith in the city park violates the Establishment Clause. I find also that plaintiff Grams does not have standing to sue as a municipal taxpayer because there was no allegation that she pays any LaCrosse municipal taxes and because the

**614**

city has never expended any tax money on the Ten Commandments monolith.

*Plaintiff Freedom from Religion Foundation*

The Freedom from Religion Foundation has alleged no injury to itself, and consequently its standing depends on that of its members. *City of St. Charles*, 794 F.2d at 267; *Valley Forge*, 454 U.S. at 476 n. 14, 102 S.Ct. at 761 n. 14; *International Union, United Auto. v. Brock*, 477 U.S. 274, 106 S.Ct. 2523, 2528, 91 L.Ed.2d 228 (1986). It is not entirely clear that any of the individual plaintiffs in this case are members of the Foundation. There was no allegation in the complaint and no evidence adduced at trial that plaintiff Grams is a member. The complaint alleged that plaintiff Annie Laurie Gaylor was a member, but there was no evidence at trial on this point. However, it is established that Annie Laurie Gaylor is the editor of a publication produced by the Foundation. Although there was no allegation or showing that plaintiff Anne Gaylor is a member, she is the president of the Foundation. Accordingly, I will presume that both Gaylors are members of the plaintiff Foundation.

However, even if both Gaylors are members, the Foundation is without standing to sue. Neither of the members has standing to sue in her own right because neither established any injury from the presence of the Ten Commandments monolith. Since an organization's standing depends on that of its members, if the members do not have standing, neither does the organization. Accordingly, I find that the Freedom from Religion Foundation is without standing to bring this suit.

### ORDER

IT IS ORDERED that this action is DISMISSED for lack of standing.